## WADLEIGH *vs.* GILMAN *&* *al.*

By the Act incorporating the City of *Bangor*, authority was conferred " to ordain and establish such acts, laws, and regulations, not inconsistent with the constitution and laws of the State, as shall be needful to the good order of said body politic." *Held*, that an ordinance of the city government, prohibiting the erection of wooden buildings in the City, within certain limits, was within the authority conferred.

*Held* further, that *a removal* of a wooden building to the inhibited district, or even from one part of such district to another, was within the meaning of the term *erection*, used in the ordinance.

THIS was an action of trespass, for breaking and entering the plaintiff's close in *Bangor*, and taking down a certain building thereon standing.

The defendants justified under an ordinance of the City government, prohibiting the erection of wooden buildings within certain limits in said City ; one of the defendants being Street Commissioner, and the other City Marshall.

It was admitted that, at the time of the passing of said ordinance, said building, which was built of wood, stood on a lot within the limits described in the ordinance ; and that a few days before it was taken down by the defendants, the plaintiff had removed it to another lot within the same inhibited district.

The Act incorporating the city of *Bangor*, conferred authority " to ordain and establish such acts, laws, and regulations, not inconsistent with the constitution and laws of this State, as shall be needful to the good order of said body politic."

The plaintiff's counsel hereupon contended, that said ordinance was illegal, unconstitutional, and void, as it was not within the legitimate powers conferred by the charter ; and also that the *removal* of this building to the lot where it was taken down by the defendants, was not a violation of said ordinance, not being an *erection*, within the plain and obvious meaning of that term, and that the defendants were therefore not justified.

But for the purpose of settling the damages, *Parris J.* ruled, *pro forma*, these points in favor of the plaintiff, and thereupon the jury returned a verdict against the defendants for $154,07, which was to be set aside and a nonsuit entered, if, in the opinion of the

whole Court, the defendants were justified under said ordinance ; otherwise judgment was to be rendered thereon.

*Kent,* City Solicitor, argued on the part of the defendants, and cited *Maine Stat.* ch. 24, sec. 1 ; *Vanderbelt v. Adams,* 7 *Cowen,* 349 ; *Stuyvesant v. The Mayor,* &c. of *New York,* 7 *Cowen,* 588 ; *Baker v. Boston,* 12 *Pick.* 184 ; *Village of Buffalo v. Webster,* 10 *Wendell,* 99.

*Rogers,* for the plaintiff, argued at length in support of the positions taken at the trial, replying also to the authorities cited on the other side.

Weston C. J. — By the statute of 1834, incorporating the city of *Bangor,* the inhabitants thereof are continued a body politic and corporate, by that name. And among other powers and privileges conferred upon them, they are authorized to ordain and establish such acts, laws, and regulations, not inconsistent with the constitution and laws of this State, as shall be needful to the good order of said body politic.

Without limiting and defining the extent of this power, it may be understood to embrace all necessary police regulations. These are essential to the well ordering of the body politic. It is an object, in the highest degree worthy of the attention of the city authorities, to take such measures, as may be practicable, to lessen the hazard and danger of fire. No city, compactly built, can be said to be well ordered or well regulated, which neglects precautions of this sort. And it appears to us, that ordinances, establishing regulations to secure the city against fire, are authorized by the charter. Nor can a doubt be entertained, but the ordinance in question is a discreet exercise of this power.

Erections of wooden buildings, within the limits prescribed, are declared unlawful ; and every violation of this ordinance is an unlawful act. But the penalty, which the city government can impose, for the breach of any of their laws, is not to exceed fifty dollars. Is this all they can do ? After exacting the penalty, must they submit to the continuance of a mass of combustible matter, erected in defiance of their ordinance, in the heart of the city ? We think not. If it was lawful for them to forbid the erection, we hold it lawful for them to cause it to be removed,

Wadleigh *v.* Gilman & al.

when erected. A salutary and lawful regulation may otherwise be defeated, and rendered ineffectual. The removal is made to prevent the hazard of the continuance of the combustible matter in a dangerous position ; and not with a view to punish the wrong-doer, or subject him to loss. If he thereby sustains a loss, it is the direct consequence of his unlawful act, of which he has no just right to complain.

The regulation in question is a measure for the general benefit. It adds to the value of property, by lessening the hazard from fire, which operates as a tax upon it, whether the owner is his own insurer, or procure others to take the risk for a valuable consideration. And economy, as well as safety, is really consulted by building with durable materials. Nor is there any danger, that the power to pass ordinances of this character, will be wantonly or unnecessarily exercised. The city authorities are annually elected by the citizens, from among themselves. No law of theirs, not acceptable to the majority, would be tolerated or suffered to remain.

Police regulations may forbid such a use, and such modifications, of private property, as would prove injurious to the citizens generally. This is one of the benefits which men derive from associating in communities. It may sometimes occasion an inconvenience to an individual ; but he has a compensation, in participating in the general advantage. Laws of this character are unquestionably within the scope of the legislative power, without impairing any constitutional provision. It does not appropriate private property to public uses ; but merely regulates its enjoyment. A portion of this power may be assigned to a city government, within its own jurisdiction. In *Vanderbelt* v. *Adams*, 7 *Cowen*, 349 ; and *Stuyvesant* v. *The Mayor, &c. of New York*, 7 *Cowen*, 585, and in *Baker* v. *Boston*, 12 *Pick.* 184, cited in the argument, this doctrine is fully sustained by the court. In the first of these cases, *Woodworth J.* illustrates the efficacy and necessity of this power in cities, by their right, which he considered as uniformly conceded, to make regulations, the object of which is security against fire. Where the owner of a city lot intends to build of wood, he holds it to be clearly within the competency of the constituted authorities, to say to him, " you must

not exercise that right, it is dangerous to all. You may build of brick or stone ; because the safety of all is, in this way, promoted."

It is insisted, that if the city ordinance has any legal efficacy, it applies only to buildings raised and erected within the limits prescribed, after its passage. But we regard this as too limited a construction. It would justify the removal there of wooden buildings at will from other quarters. For although in this instance, the building was removed from a part of the territory, to which the ordinance applied, where its continuance was lawful, to another, yet if to remove is not to erect, a removal from without those limits, where such erections are lawful, would be no violation of the law. To erect, is literally to raise up or to build; and if it might admit of question, whether a building removed from one place to another, is not there raised up or built, yet we are to understand the term according to its plain and obvious meaning, in the connection in which it was used. The mischief did not consist in the act of erecting ; but in the continuance of the erection. The ordinance did not meddle with the erections as they stood. This would have transcended their power. But it extended to new erections, in the place of such as then existed ; and it protected all places then vacant, from the annoyance and danger of wooden buildings. If it were not so, any barn, stable, wood or chaise house, from any part of the limits prescribed, might be removed to the most central part of the city ; and there converted into stores or dwellinghouses.

The construction, which appears to us best calculated to prevent the mischief, and effect the salutary purposes, contemplated by the ordinance, is, to regard as within its operation, wooden erections placed where none existed before, whether newly built, or removed there from some other quarter. The hope might well be encouraged, that as the lands became more valuable, wooden buildings would give place to better and more durable erections. Little would be gained in this way, if instead of taking them down, they should only be removed from one site to another.

With regard to that part of the ordinance, which subjects the party, causing the erection, to the payment of the expenses in-

curred in taking it down and in its removal, we are not satisfied that it can be sustained. It might exceed the penalty, which the city is authorized to impose, which is the only punishment, directly operating as such, to which the wrongdoer is rendered liable.

The justification being made out, in the opinion of the Court, on the part of the defendants, according to the agreement of the parties, the verdict is to be set aside, and a nonsuit entered.