[No. 51. Decided November 21, 1890.]

THE CITY OF OLYMPIA v. C. B. MANN.

MUNICIPAL CORPORATIONS—FIRE LIMITS—ORDINANCES.

Where the charter of a city confers " power to make regulations for the prevention of accidents by fire," and " to prevent, by all possible and proper means, danger or risk of injury or damages by fire arising from carelessness, negligence or otherwise," said city is authorized to establish fire limits, and prevent the erection of wooden buildings therein.

An ordinance establishing fire limits, and providing that no wooden buildings shall be constructed therein, except a permit therefor be granted by the city council, is not unreasonable nor unduly oppressive, as its burdens are cast alike upon all persons within the limits of the district prescribed by it. (STILES, J., dissents.)

*Appeal from District Court, Thurston County.*

The facts are fully stated in the opinion.

*C. H. Ayer*, City Attorney, and *B. F. Dennison*, for appellant.

In the case of a municipal ordinance, the question is, whether it is within the powers granted in the charter, or necessary, as an implied power, to the exercise of the powers expressly granted. The propriety and mode of exercising the power is a question solely for the legislative body exercising it. It is a legislative and not a judicial question. *Knoxville v. Bird*, 47 Am. Rep. 326; *State v. Mott*, 48 Am. Rep. 105.

Courts will not investigate the reasonableness of an ordinance, unless the same is plainly and clearly unreasonable on its face. Horr and Bemis, Mun. Ord., §§ 127–129. Nor the exercise of legislative discretion, except in cases of gross abuse. *Van Baalen v. People*, 40 Mich. 258; *Ex parte Delaney*, 43 Cal. 478; *Ex parte Smith*, 38 Cal. 709; Dill. Mun. Corp. 94–5.

A municipal corporation has inherent power, independent of any legislative grant, to prohibit the erection of wooden buildings in the densely built-up parts of a city. *Monroe v. Hoffman*, 29 Am. Rep. 345; Horr and Bem. Mun. Ord., §§ 221–2; *Barbier v. Connolly*, 113 U. S. 27; Dill. Mun. Corp., § 89, and note.

*J. W. Robinson*, and *Cavanaugh & Fitch*, for appellee.

Where the territorial legislature expressly granted the power to create fire limits and the methods of procedure to the larger towns and cities, it thereby declared that an express grant was necessary, and that municipalities have not the inherent powers to create "fire limits." *Collins v. Hatch*, 18 Ohio, 525; *Com. v. Voorhies*, 12 Mon. (B.) 361; *Millerstown v. Bell*, 123 Pa. St. 151; *Des Moines v. Gilchrist*, 67 Iowa, 210; Horr and Bem. Mun. Ord., §§ 222, 211.

A special grant of power is necessary to support this or-

dinance. It is not a power that can be implied. *Keokuk v. Scroggs,* 39 Iowa, 447; *Pye v. Peterson,* 45 Tex. 312; *Kneedler v. Norristown,* 100 Pa. St. 368; 45 Am. Rep. 384, and cases there cited; *Champaign v. Harmon,* 98 Ill. 491; *Hudson v. Thorne,* 7 Paige, 261.

The opinion of the court was delivered by

ANDERS, C. J.—Appellee being the owner of a vacant lot on Fourth street in Olympia, described as lot 1 in block 24, of the town (now city) of Olympia, and being desirous of erecting thereon a two-story frame building, to be used as store rooms and offices, applied to the city council of said city, in accordance with § 8 of ordinance No. 304 of said city, entitled: "An ordinance defining the fire limits and to protect property from fire," approved April 24, 1889, for a permit to erect said building. The said lot being within the fire limits, as established by said ordinance, the city council refused permission to erect the proposed building, and notified appellee not to undertake the erection of the same. Appellee thereupon brought this action to perpetually enjoin and restrain the city and its officers from in any manner enforcing or attempting to enforce said ordinance against him or his employes laboring upon said building. In his complaint he alleges substantially, in addition to the facts above mentioned, that the boundaries of said fire limits as fixed by said ordinance are unreasonable, injurious and inequitable, and the same was passed with a desire to force brick and stone buildings on Fourth and Main streets and increase the value of neighboring property at the expense of those intending to improve, and that since the passage of said ordinance and the rejection of plaintiff's application for a permit, the said city has granted permits for the erection of wooden buildings within said fire limits, but not on Main or Fourth streets, whereby the danger of conflagration has been much more increased than would be by the erection of plaintiff's

desired building. That said ordinance is null and void; that the said city had and has no authority to create or maintain fire limits; that the ordinance is void also for want of conformity to the city charter and general laws; even if the city had such power, that a court of equity should prohibit its enforcement; that the city has no authority to declare anything a nuisance, and only has authority to abate such nuisances as are known and defined by statute. The complaint further sets forth the penalty prescribed by said ordinance for its violation, and avers that the defendant, the city of Olympia, through its marshal, threatens to arrest plaintiff and all those who may be found at work on said building; that he has a large number of men employed and ready to commence work on said building, and that unless the city and its officers are restrained and prohibited from enforcing said ordinance plaintiff will suffer great and irreparable damage, for which there is no speedy or adequate remedy at law, and that the threatened arrests will create great and vexatious litigation. To this complaint the defendant filed a general demurrer, which was overruled by the court, and, defendant electing to stand upon the demurrer, judgment was rendered for plaintiff, from which defendant appeals to this court.

We are therefore called upon to decide the question, whether the city ordinance complained of is or is not valid, or in other words, whether the city council was legally empowered to pass it. This ordinance, after setting out the boundaries of the fire limits within the city, among other things provides as follows:

"Sec. 7. No wooden building shall be constructed within the fire limits. *Provided,* The city council may grant permits to construct wooden buildings within the fire limits as hereinafter provided.

"Sec. 10. Any person who shall erect or cause to be erected or assist in the erection of any building contrary to the provisions of this ordinance, or shall maintain and re-

fuse to remove any building erected contrary to the provisions of this ordinance for ten days after receiving notice to remove the same from the fire wardens, shall, upon conviction thereof, be deemed guilty of a misdemeanor and be fined in any sum not greater than one hundred dollars, or be imprisoned in the city jail not more than thirty days, or be both fined and imprisoned at the discretion of the court."

This ordinance is assailed by counsel for appellee upon the ground that the city charter did not authorize its passage, and upon the further ground that it is unreasonable, or rather that the boundaries of the fire limits are "unreasonable, injurious and inequitable." Among the powers granted to the city of Olympia by its charter, and which are relied on by appellant to sustain the ordinance in question are these:

"The city of Olympia shall have power to make regulations for the prevention of accidents by fire, to organize and establish a fire department, and make and ordain rules for the government of the same, to provide fire engines and other apparatus, and to levy and collect special taxes for that purpose, . . . to prevent by all possible and proper means danger or risk of injury or damages by fire arising from carelessness, negligence or otherwise; . . to adopt proper ordinances for the government of the city, and to carry into effect the powers given by this act." . . . and "the city of Olympia shall have such other powers and privileges not herein specially enumerated, as are incident to municipal corporations of like character and degree."

The learned counsel for appellee contends with much earnestness that, notwithstanding these legislative grants, the city had no power to enact the ordinance, for the reason that the powers, if any, conferred by the charter are general in their nature, and that a special grant of power is necessary to authorize the establishment of fire limits or the prevention of the erection of wooden buildings within the city. To sustain this position counsel cites, among others, the following cases as especially in

point: *City of Keokuk v. Scroggs,* 39 Iowa, 447; *Pye v. Peterson,* 45 Tex. 312; *Kneedler v. Borough of Norristown,* 100 Pa. St. 368; 45 Am. Rep. 384; *City of Champaign v. Harmon,* 98 Ill. 491; and *Mayor of Hudson v. Thorne,* 7 Paige, 261. In the case of the *City of Keokuk v. Scroggs,* it appears that the original charter conferred a general power upon the city to make such ordinances as shall be necessary to secure the city and its inhabitants from injury by fire. This charter was amended, and the amendment contained full and specific enumeration of the acts which the city might do for the purpose of guarding against calamities by fire. In the enumeration of powers in the amended charter nothing was said about the control of wood or lumber yards. The defendant was prosecuted for the violation of that portion of the city ordinance relating to the location of lumber yards within the fire limits. And the court said: "The power to pass an ordinance requiring the removal of a lumber yard from a specific portion of the city,.is not expressly conferred in the charter, nor can it be claimed that it is necessary to make the powers conferred available." And further, that " the general provision contained in the original charter has become absorbed in the particular enumeration in the amendment. . . . Therefore, whatever power is conferred upon the city respecting fires must be found in the amendment to the charter." There being neither a general nor special power in the charter authorizing the city to enact the ordinance as to lumber yards, the court held no such power existed. The case of *Pye v. Peterson,* 45 Tex. 312, was a case involving the validity of a fire ordinance. The charter provided generally that the city might have power to " ordain and establish such acts, laws, regulations and ordinances not inconsistent with the constitution or laws of this state, as shall be needful for the government, interest, welfare and good order of said body politic;" also, " to abate and remove nuisances, and to punish

the authors thereof by penalties, fine and imprisonment, and to define and declare what shall be nuisances." And the court said that "without an express grant a city cannot establish fire limits, declare wooden buildings erected therein to be nuisances, and to provide for the removal of such buildings, and the punishment of those erecting them." And in this case the court also said: "The form of the ordinance indicates that it was framed under this latter clause." And the point really decided was, that the council had no power to declare wooden buildings to be nuisances. In the case of *Kneedler v. Borough of Norristown*, 100 Pa. St. 368, 45 Am. Rep. 384, the court says: "The charter of the borough of Norristown contains no authority to the council to enact ordinances prohibiting the erection of wooden buildings. Nor is there anything in the grant of general powers conferred upon the borough from which such an authority can be necessarily inferred or to which it is indispensable." But the court was apparently influenced in its decision by the fact that the legislature had previously assumed jurisdiction of the subject, and had expressly enacted that wooden buildings should not be erected on certain streets of the town, which fact was a very strong reason for the conclusion that it had not delegated the power claimed to the borough itself. And further, the court seems to concede, that, if the power to enact the ordinance had been conferred by the charter of the borough, or could necessarily be implied from any of the provisions thereof, it would have been valid. The controversy in the case of the *City of Champaign v. Harmon*, 98 Ill. 491, arose out of a claim made by the city to certain real estate purchased by it at a tax sale. And the court very properly held that, while the city had the power to purchase and hold real estate necessary for corporate purposes, it could not do so for purposes of speculation, without special power granted to that end. The case of *Mayor of Hudson v. Thorne*, 7 Paige, 261, seems

to support the position of appellee. Other cases are also
cited by counsel bearing more or less directly upon the
point. But in view of the provisions of the charter under
consideration, and of the decisions of other courts of great
learning and ability to the contrary, we do not feel bound
by these decisions. In fact, we do not think they are sus-
tained by the better reason, or by the weight of authority.

Judge Dillon defines the powers possessed by municipal
corporations to be: (1) Those granted in express words;
(2) those necessarily or fairly implied in or incident to the
powers expressly granted; and (3) those essential to the
declared objects and purposes of the corporation. 1 Dill.
Mun. Cor. (4th ed.), § 89. And taking this to be a correct
statement of the law, it follows that if the charter of Olym-
pia, either expressly or by necessary or fair implication,
gave the city council authority to enact the fire ordinance,
or if such power is essential to the declared objects and
purposes of the municipality, then the ordinance ought to
be sustained. The power to do a particular thing may be,
and often is, delegated to a municipal corporation in gen-
eral terms, and these general terms may be quite as broad
and comprehensive as if expressed in specific language.
In the case before us, the city charter confers upon the city
power to make regulations for the prevention of accidents
by fire and to prevent, *by all possible and proper* means,
danger or risk of injury or damages by fire arising from
carelessness, negligence *or otherwise.* And if these expres-
sions of the legislature did not expressly authorize the
council to establish fire limits within the city and to pre-
vent the erection of wooden buildings therein, such power
is certainly fairly implied in what is expressed, provided
the means employed are proper or necessary "to prevent
accidents or danger or risk of injury or damage by fire."
The propriety or necessity of the methods to be pursued
to accomplish the object sought, was left to the discretion
of the council, who are the representatives of the people

themselves, and who are the sole legislative body of the corporation. The council having by its acts declared the ordinance to be a proper one, we are of the opinion that this court is not warranted in setting it aside as invalid. In fact, it is held by learned courts and text writers that municipalities have inherent power to pass ordinances for the protection of their citizens from fire, without express legislative authority. In a recent work upon the subject of municipal police ordinances we find this language: "The power to take all measures necessary to prevent fires and their spread is of prime importance to the citizens of every community. It belongs to that class of powers exercised for self-preservation, which are inherent in every municipality, and which do not need the authorization of an express grant. Every precaution possible should be taken to prevent the destruction to property, and the danger to life, incident to conflagration, and for this purpose as great a degree of interference with personal rights is permitted as under any other power. Private interests are entirely subservient to the public safety.

"The first preventive step taken is usually to prescribe fire limits; that is, territorial limits within which it shall be unlawful to erect certain classes of buildings. This is always permissible. Owing to the extreme importance of such regulations and their vital interest to the community, one would hardly think that the power of erecting fire limits in a thickly built-up district would ever be denied; still, it is surprising to note that two courts have insisted that express authority must exist for such regulations. It seems that their regard for personal rights had been carried to an unwarranted extent in view of the importance of preventing the destruction of property by fire, and great as our regard must be for their reasoning and conclusions, the rule above enunciated seems to be the true one, and the great majority of the well-advised decisions tends to its support." Horr & Bemis, Mun. Pol. Ord., §§ 221–2. In

the case of *Wadleigh v. Gilman*, 12 Me. 403 ; 28 Am. Dec. 188, the court held that an ordinance of the city government of Bangor prohibiting the erection of wooden buildings in the city within certain limits was within the authority conferred, under authority in the charter " to ordain and establish such acts, laws, and regulations, not inconsistent with the constitution and laws of this state, as shall be needful to the good order of said body politic." In *Alexander v. Town of Greenville*, 54 Miss. 659, the court held that a power "to provide for the prevention and extinguishment of fires," implies a right to establish fire limits. In *Mayor and Council of Monroe v. Hoffman*, 29 La. Ann. 651 (29 Am. Rep. 345) it was decided that a municipal corporation has inherent power, independent of legislative grant, to forbid the erection and compel the removal of buildings formed of combustible materials, within the densely built-up parts of a town. And in *Baumgartner v. Hasty*, 100 Ind. 575; 50 Am. Rep. 830, after citing authorities sustaining the proposition that municipal corporations possess inherent power to prohibit the erection of wooden buildings within prescribed limits and to cause their removal, at page 580 the court says: "These cases rest on solid principle, for the rule has always been that a municipal corporation has the inherent power to enact ordinances for the protection of the property of its citizens against fire." And the court says further: "A legislative act granting authority to take precautions against fire, and ordinances passed under such an act authorizing the removal of wooden structures erected within forbidden limits, are little more than express declarations of the existence of powers which existed at common law, and are necessarily implied in the grant of a charter to a city." (p. 581.) See also 1 Dill. Mun. Corp. (4th ed.), § 405. We will not now stop to notice other cases cited by counsel to the same effect, as many of them are commented on and approved in the cases already mentioned by us.

It is further contended by counsel for appellee that the
ordinance is unreasonable and therefore void for that rea-
son if for no other. This is a proper question for the court
to determine. The city council, as the legislative body of
the municipality, must of necessity be vested with more
or less discretion as to the reasonableness of the means
necessary to effectuate lawful objects. They are in a bet-
ter position than the court to judge of the best course to
pursue, as well as of the methods best calculated to effect
desired results, and the courts should not set aside or re-
view their acts unless, upon their face, they are manifestly
unreasonable or based upon fraud, or passed in wanton
disregard of private rights or are in excess of the power
of the council. The motives of the council cannot be in-
quired into, but must be presumed to have been to ac-
complish the natural and reasonable result of their act.
We see nothing unreasonable in the ordinance, viewed
in the light of all the facts before us. Its burdens, if any,
are cast alike upon all persons within the limits of the
district prescribed by it, and the city council had lawful
authority to pass it. We cannot see that it is unduly op-
pressive or that it discriminates against any particular
individual, or that it was passed in a spirit of wanton
disregard of proprietary rights.

For the foregoing reasons the judgment of the court be-
low will be reversed and the cause remanded for further
proceedings in accordance with this opinion. So ordered.

HOYT, J. concurs.

SCOTT, J. (*concurring*).—I concur in all that is said in
regard to the power of the city of Olympia to establish
fire limits, and concur in the result reached, because it
appears to me the question as to the invalidity of the
ordinance upon the ground of its unreasonableness is not
properly before us in this case.

I do not think, however, the city has the power, or

can have it even by express legislative enactment, to grant or refuse permission at its pleasure to erect wooden buildings within the fire limit district, where the same are prohibited by the ordinance, although an attempt is made therein to except cases where the city council should see fit to grant a special permit, unless certain rules, regulations or conditions are laid down by ordinance which apply to all persons alike and are conclusive in themselves; that it cannot exercise the arbitrary power to grant such a permission to one person and refuse it to another under like conditions and circumstances. As to whether any of the provisions of this ordinance have this effect or might be so applied, and if so, whether the entire ordinance is thereby invalidated or rendered void only in so far as it relates to the granting of such special permits, and be otherwise valid, which would prohibit the erection of all wooden buildings within the prescribed district without exception. I desire not to express an opinion in the absence of an argument of the particular questions. Powers granted to a city must be reasonably and fairly exercised, and its laws made applicable to all alike. The attempted enforcement of power, and the unreasonableness and injustice of ordinances whereby a different result could be brought about or this principle violated, can be inquired into, to this extent at least. There was no attempt to attack the ordinance upon this ground in the complaint, but it is alleged to be void because the boundaries of the fire limit district as fixed therein are unreasonable, without stating the facts wherein such unreasonableness consists.

STILES, J. (*dissenting*).—I dissent. No objection was made upon the argument here, to the discussion of the question as to the equality and fairness of §§ 7, 8 and 9 of the ordinance, which it was assumed was raised by paragraph 7 of the complaint; and to my mind those sections set up such a system of arbitrary control of buildings in

the city of Olympia, by the council, as is not entitled to be termed reasonable.

The establishment of fire limits means the designation of a territory within which wooden buildings must not be erected. But this ordinance, while it designates limits, and says that no wooden buildings shall be constructed therein, clearly shows by its context that that was not its real purpose. The true purpose of it was to compel every person desiring to erect a wooden building to go before the council, which retained within itself the power to say whether he should erect it or not; not according to any fixed rules of determination, under which all applicants would be treated alike, but without rules or regulations, whereby favoritism or influence, or other motives not proper to the determination of such a question, might enter into and actually determine it. If there were to be exceptions to the ordinance, the exceptions should have been declared, and regulations made under which they could be availed of. If there was territory embraced in the ordinance, within which it was not expected to enforce the ordinance, by reason of its unsettled condition, it was unreasonable to so embrace it, and the limits should not have been extended over it until such time as the conditions were proper for such extension.

I concur in holding that the city of Olympia has the power to ordain fire limits implied in its charter, but I cannot agree that *such* an ordinance was ever contemplated by the legislature, and, therefore, hold the court's action in overruling the demurrer to have been eminently right.

DUNBAR, J., not sitting.