# VILLAGE OF ASHLEY, Appellant, v. ASHLEY LUMBER COMPANY, Respondent.

(169 N. W. 87.)

**Villages — boards of trustees — powers of — fires — prevention or extinguishment — measures for — fire limits.**

1. Under the provisions of ¶ 3 of § 3861 of the Compiled Laws of 1913, which among other things gives to the board of trustees of villages the power generally "to establish other measures of prudence for the prevention or extinguishment of fires as it shall deem proper," such village trustees have the power to establish fire limits.

**Honesty of actions of — courts must presume.**

2. The courts must presume honesty, and not dishonesty, as far as the actions of village trustees are concerned.

**Fire district — limits of — discretion of board.**

3. The limits of a fire district must necessarily be largely left to the sound discretion of the administrative or legislative body which is authorized to create it.

**Village — ordinance — fixing fire limits — violation of — penalty prescribed — in addition to fine — removal or destruction of wooden buildings — erected in violation of ordinance — validity of ordinance — determination of court — orders of court — nuisances.**

4. Where, in violation of the provisions of a village ordinance, a person erects a wooden structure within a fire district, and the only penalty prescribed by the ordinance is a fine of $10 for such construction, but the ordinance also provides that the village trustees may condemn such building, if erected, and order its destruction or removal, and when there is doubt as to the validity of the ordinance and the power of the village trustees to create the same,

---

NOTE.—That a city has the right to establish fire districts, and prohibit the erection of wooden buildings, as a safeguard against the occurrence and spread of conflagration, is not denied and is well settled by the authorities collated in a note in 13 L.R.A. 481, on municipal control over the erection of wooden buildings within fire limits. On power of municipality to prescribe fire limits and prohibit the erection of wooden buildings therein, see note in 12 L.R.A. 150; as to what is a sufficient compliance with ordinance requiring buildings to be constructed of noncombustible material, see note in 2 L.R.A.(N.S.) 483; on the question of municipal control over wooden and frame buildings as a nuisance, see note in 38 L.R.A. 170; on power to require removal, or to prohibit repairs, of wooden building within fire limits when damaged or partially destroyed by fire, see note in 21 L.R.A.(N.S.) 454.

the court in a proceeding in equity to determine such question and after resolving the doubt in favor of the village, may order the defendant to remove such building, even though generally speaking it is not of such a nature as to be a nuisance at the common law.

Opinion filed August 5, 1918.    Rehearing denied September 25, 1918.

Action to compel the removal of a frame building constructed in violation of a village ordinance.

Appeal from the District Court of McIntosh County, Honorable *Frank P. Allen,* Judge.

Judgment for defendant.    Plaintiff appeals.

Reversed.

*M. J. George* and *W. S. Lauder,* for appellant.

A municipal corporation, either city or village, possesses, without special authorization, the inherent power to establish by proper ordinances, fire limits within its borders, and to prosecute actions for the removal of buildings constructed in violation of such ordinances.   2 Dill. Mun. Corp. 5th ed. § 727; 28 Cyc. 741 et seq.; 13 Am. & Eng. Enc. Law, 2d ed. 396.

But here such power has been conferred by statute.    Comp. Laws 1913, § 3599, subds. 46 and 47; § 3861, subd. 2.

"No one at this time doubts the power of the legislature to prohibit the erection of wooden buildings within the limits of a city or borough, nor that the legislature may confer the same power upon municipal corporations such as cities and boroughs."   Klinger v. Bickel, 117 Pa. 326; Com. v. Tewksbury, 11 Met. 58; Olympia v. Mann, 12 L.R.A. 150 and note, 1 Wash. 389; Mt. Vernon First Nat. Bank v. Sarlls (Ind.) 13 L.R.A. 481, and note.

A village, like every other municipality, is an agency established by law for the convenient government of the people residing therein.

"The municipality is regarded as the representative of the public for the purpose of maintaining suits in equity or at law for the vindication of the public rights, hence the city was a proper party in this action." LaMoure v. Lasell, 26 N. D. 638, 647; Lee v. Harris, 206 Ill. 428; Methodist Episcopal Church v. Hoboken, 33 N. J. L. 13; California v. Howard, 78 Mo. 88.

A building erected within a fire limit in violation of a valid ordinance

may be summarily removed by authority of the city. Wadleigh v. Gilman, 23 Me. 403; Baumgartner v. Hasty, 100 Ind. 575; King v. Davenport, 98 Ill. 305.

This may be done without judicial proceedings. Lemmon v. Guthrie, 113 Iowa, 36; Eichenlaub v. St. Joseph, 113 Mo. 395; Hine v. New Haven, 40 Conn. 478; King v. Davenport, 98 Iowa, 305; Baumgartner v. Hasty, 100 Ind. 575; Klingler v. Bickel, 117 Pa. 328; McKibben v. Ft. Smith, 35 Ark. 352.

The ordinance here involved is a necessary, fair, and reasonable regulation. Olympia v. Mann, supra.

*Gannon & Ludwigs,* for respondent.

Municipal corporations take the authority and powers which they possess from the legislature. They are inferior political subdivisions of the state, and have no other powers than those granted by the state. 1 Dill. Mun. Corp. 5th ed. § 236; Barnett v. Denison, 145 U. S. 135.; Detroit v. R. Co. 171 U. S. 48; Treadway v. Schnauberl, 1 Dak. 227; Cooley, Const. Lim. §§ 192, 195; Kneedler v. Norristown, 100 Pa. 368, 45 Am. Rep. 383; Thompson v. Lee County, 3 Wall. 327; Minturn v. Larne, 23 How. 435; Willard v. Killingsworth, 8 Conn. 247; Bridgeport v. Housatonic R. Co. 15 Conn. 475.

Any doubt must be resolved against the corporation. Minturn v. Larne, 23 How. 435; Sutherland, Stat. Constr. § 380, and cases cited.

Restrictions on building or repairing wooden structures, called fire limits, are invasions of private rights and are to be strictly confined to their literal import. Sutherland, Stat. Constr. § 367; Booth v. State, 4 Conn. 65.

Such limitations and restrictions must not only be convenient, but they must reasonably appear to be indispensable. Dill. Mun. Corp. § 236, supra; Cooley, Const. Lim. 192, 195.

Do the statutes of this state confer the power on village boards to ordain the destruction or removal of wooden buildings erected within so-called fixed fire limits of the village?

In construing a statute it is an elementary principle that such general language as is used in this statute must be taken in connection with and limited by the special powers conferred. Keokuk v. Sorogs, 39 Iowa, 447; Mt. Pleasant v. Breeze, 11 Iowa, 339; St. Louis v. Laugh-

lin, 49 Mo. 599; Comp. Laws 1913, § 3861, subd. 3; Des Moines v. Gilchrist, 67 Iowa, 210; Pratt v. Litchfield, 62 Conn. 112.

The power must be expressly given, either by statute or by the charter. Olympia v. Mann (Wash.) 12 L.R.A. 150; 28 Cyc. 260 to 266.

"Implied power springs from necessity. That which is necessary for a large city may not be for a small city or borough. That which is necessary cannot be implied." 2 McQuillin, Mun. Corp. § 732.

A municipality has no inherent power to establish fire limits. State v. Schuchardt, 42 La. Ann. 49; Hudson v. Thorn, 7 Paige, 261; Rye v. Peterson, 45 Tex. 315, 23 Am. Rep. 608; Kneedler v. Norristown, 100 Pa. 368, 45 Am. Rep. 383.

If this village had the power to pass such an ordinance, was its passage such a fair and reasonable exercise of the power as the law requires? Ordinances which are partial or unfair, or which discriminate in favor of one class against another, are invalid, and if they seem to the court oppressive, unfair, partial, or discriminating, they are declared unreasonable and void whether this appear from their face, or from proof aliunde. 28 Cyc. 369–370 and cases cited; 3 McQuillin, Mun. Corp. pp. 2066, 2071, and notes on 2072; Richmond v. Dudley (Ind.) 13 L.R.A. 586 and note; Janesville v. Carpenter, 77 Wis. 288, 20 Am. St. Rep. 123; N. D. Const. § 20; Lake View v. Tate (Ill.) 6 L.R.A. 268 and note.

The question of the reasonableness or fairness of an ordinance is for the court. Hawse v. Chicago (Ill.) 30 L.R.A. 225; Chicago v. Rumpff (Ill.) 92 Am. Dec. 196; Cicero Lumber Co. v. Cicero, 42 L.R.A. 696; Sioux Falls v. Kirby, 6 S. D. 66, 25 L.R.A. 621.

In determining this question, the size, conditions of, and circumstances of, a village are to be considered. Olympia v. Mann, 12 L.R.A. 155; State v. Tenant, 15 L.R.A. 423.

This action is brought for a final injunction, and the time when such an injunction may be granted is fixed by statute, and this statute is the only authority for such action, and plaintiff cannot proceed under any so-called common-law right. Civ. Code, §§ 7213, 7228, 7229, 7312 and 7331.

Equity will not lend its aid to enforce by injunction the by-laws or ordinances of a municipal corporation, restraining an act, unless the act is shown to be a nuisance *per se*. Coast v. Spring Lake, 51 L.R.A.

657 and note; 2 Dill. Mun. Corp. 5th ed. § 650; St. Johns v. McFarlan, 33 Mich. 72, 23 Am. Rep. 671; Waupun v. Moore, 34 Wis. 450, 17 Am. Rep. 446; Finnegan v. Allen, 46 Ill. App. 553; 2 McQuillin, Mun. Corp. § 806; High, Inj. § 788, 4th ed. 748; Hudson v. Thorn, 7 Paige, 261; Phillips v. Allen, 41 Pa. 481; Eden, Inj. 160; Schuster v. Board of Health, 49 Barb. 450; Grant, Corp. 84; Lake View v. Letz, 44 Ill. 81; Ottumwa v. Chinn (Iowa) 39 N. W. 670; Manchester v. Smythe, 64 N. H. 380, 10 Atl. 700; Ogden v. Weldon, 40 N. Y. S. R. 235; Honesdale v. Weaver, 2 Pa. Dist. R. 344; Williamsport v. McFadden, 15 N. C. 269; Ellwood City v. Mani, 16 Pa. Co. Ct. 474; Redwing v. Guptil (Minn.) 41 L.R.A. 321 and note 328; Bangs v. Dworak (Neb.) 106 N. W. 780; 2 Dill. Mun. Corp. 5th ed. 1107 note; Janesville v. Carpenter, 77 Wis. 288, 20 Am. St. Rep. 123; New Rochelle v. Lang, 75 Hun, 608, 27 N. Y. Supp. 600; Griener Kellog Drug Co. v. Truett, 97 Tex. 377, 79 S. W. 4; Kissinger v. Hay, 52 Tex. Civ. App. 295, 113 S. W. 1005.

The power to declare what shall be a nuisance does not authorize a village to declare that a nuisance which is not such in fact. Yate v. Milwaukee, 10 Wall. 497; 2 Dill. Mun. Corp. 5th ed. § 684, and cases cited; Lake v. Aberdeen, 57 Miss. 260; Rye v. Peterson, 23 Am. Rep. 608; Ward v. Little Rock, 48 Am. Rep. 46; Dill. Mun. Corp. 3d ed. § 374; High, Inj.; Orlando v. Pragg (Fla.) 19 L.R.A. 196; Evansville v. Miller (Ind.) 38 L.R.A. 161; Mt. Vernon Bank v. Sarlls, 13 L.R.A. 481; Grossman v. Oakland (Or.) 36 L.R.A. 593 and note; Hattenbach v. New York C. & H. R. R. Co. 18 Hun, 123.

BRUCE, Ch. J. This is an action in equity to have decreed to be a nuisance and abated as such, a certain frame building of the dimensions of 14 by 20 feet with 8-foot posts, which was constructed in the village of Ashley in violation of the terms of the village ordinance—which created a fire district.

Although it seems to be conceded that the building was not in itself such a structure as would have been deemed a nuisance at the common law, the plaintiff and appellant contends that since the building was within the limits of the fire district and was constructed in violation of the village ordinance it could be properly decreed to be removed, and that the creation of the fire district made proof of the fact of an actual

nuisance unnecessary. The contention of the defendant and respondent is that in the first place the village of Ashley had not the power to pass the ordinance in question, and in the second that, if it had such power, the power had not been exercised in a reasonable and fair manner and without discrimination, and that, therefore, the ordinance was invalid, or that, at any rate, a court of equity should not enforce the provisions of an ordinance so enacted. He also maintains that the case is not in any event one of which courts of equity will take cognizance, since the remedies afforded by the courts of law are adequate to the situation.

The only express grant of power, as far as villages are concerned, seems to be contained, if contained at all, in ¶ 3 of § 3861, Compiled Laws 1913, which provides that:

"The boards of trustees shall have the following powers: . . . To organize fire companies, hook and ladder companies, to regulate their government and the times and manner of their exercise; to provide all necessary apparatus for the extinguishment of fires; to make owners of buildings provide ladders and fire buckets, which are hereby declared to be appurtenances to the real estate and exempt from execution, seizure or sale; and if the owner shall refuse to procure suitable ladders or fire buckets after reasonable notice, the trustees may procure and deliver the same to him; and in default of payment thereof may recover of said owner the value of said ladder and fire buckets, by suit before the justice of the peace of the village, and the courts accruing thereby; to regulate the storage of gunpowder and other material; to direct the construction of a place for the safe deposit of ashes; and may under any order by it entered upon the proper book of the board, visit or appoint one or more fire wardens to visit, and examine at all reasonable hours, dwelling houses, lots, yards, inclosures, and buildings of every description, *discover if any of them are in a dangerous condition, and provide proper remedies for such dangers;* to regulate the manner of putting up stoves and stovepipes; to prevent out-fires and the use of fireworks and the discharge of firearms within the limits of said corporation, or such parts thereof as it may think proper; to compel the inhabitants of such village to aid in extinguishment of fire and prevent its communication to other buildings, under such penalties as are in this chapter provided; to construct and preserve reservoirs, wells, pumps and other waterworks, and to regulate the use thereof and, *generally, to establish other measures*

*of prudence for the prevention or extinguishment of fires as it shall deem proper."*

This section is to be compared with § 3599 of the Compiled Laws of 1913, § 47 of which provides that a *city* shall have the power:

"To prescribe the limits within which wooden buildings shall not be erected or placed, or repaired without permission, and to direct that all and any buildings within said limits, which shall be known as the fire limits, when the same shall have been damaged by fire, decay or otherwise, to the extent of 50 per cent of the value, shall be torn down or removed and to prescribe the manner of ascertaining such damage and to provide for the removal of any structure or building erected contrary to such prescription, and to declare each day's continuance of such structure or building a separate offense, and prescribe penalties therefor; and define fire proof material and by ordinance provide for issuing building permits, and appointment of building inspectors."

Counsel for respondent argues from this comparison that not only was no power to create fire districts granted to villages, but the power was purposely and intentionally omitted. He argues that in a city permanency of location is practically guaranteed, and that property owners will be justified in constructing expensive buildings, and that the opposite is true of villages, and not only this, but in villages the board of trustees may combine with the favored business men to exclude competition by confining its fire areas to those portions of the village owned by their would-be competitors.

Counsel for appellant, on the other hand, contends that:

1. A village has the inherent power to create such districts independently of any statutes. 2. That the power may be inferred from the provisions of subdivision 3 of § 3861 of the Compiled Laws of 1913, which grants to the board of trustees the power to "establish other measures of prudence for the prevention or extinguishment of fires as it shall deem proper."

We agree with counsel for respondent that since the cities and villages of North Dakota are creatures of the statute and of the statute alone, they have no inherent powers, but such only as the legislature has granted to them either in their charters or in the general acts under which they have been incorporated, together with such other powers as are necessarily implied from or incident to those expressly granted or

which are indispensable to the declared objects and purposes of their creation. See 19 R. C. L. 768; Charleston v. Reed, 27 W. Va. 681, 55 Am. Rep. 336.

We are, however, none the less satisfied that the words, "to establish other means of prudence for the prevention or extinguishment of fires as it shall deem proper," necessarily imply, or rather expressly grant, the power to create fire districts.

It is not necessary for us to hold that the creation of a fire district belongs to any particular one of the classes or subjects before enumerated in the section, though there is much in support of this proposition. The case, indeed, is not one of an express enumeration followed by general words in a restrictive or penal act, as where certain acts or things or games or pursuits are made unlawful and other similar acts or things or games or pursuits are prohibited. The clause contains a general grant of power, and not a negation. This general grant follows, it is true, a specific enumeration; but it is a general grant of power none the less, and not a restriction on any power theretofore. granted. It is to be noticed that the clause reads, "And generally to establish, etc." Clearly the section should be construed as if it had read, "Generally to establish measures of prudence for the prevention and extinguishment of fires as it shall deem proper, and among them to organize fire companies, etc." It, at any rate, expressly states that the other measures of prudence for the prevention or the extinguishment of fires shall be such as the village trustees deem proper. It does not limit these trustees to the particular classes enumerated. The general subject or genus of the enumeration is fire protection, and the establishment of a fire district certainly comes within this general genus. See State ex rel. Shaw v. Frazier, 39 N. D. 430, 167 N. W. 510.

We realize that no such power was held to have been granted in the case of Hudson v. Thorne, 7 Paige, 261, where "the city charter which authorized the common council from time to time to pass such ordinances as they should think proper to remove or prevent the construction of any fireplace, hearth, chimney, stove, oven, boiler, kettle, or apparatus used in any house, building, manufactory, or business which might be dangerous in causing or promoting fires; to regulate or prevent the carrying on of manufactures dangerous in causing or promoting fires; to adopt and establish such regulations for the prevention or

suppression of fires as might be necessary; and, generally, to make all such rules, regulations, by-laws, and ordinances for the good government of the city, and the trade and commerce thereof, as they might deem expedient, not repugnant to the Constitution and the laws of the state."

We cannot, however, believe that this decision should be followed by us or is controlling. Much more reasonable, indeed, appears to be that of the supreme court of Washington in the case of Olympia v. Mann, 1 Wash. 389, 12 L.R.A. 150, 25 Pac. 337, wherein the city was held to have the authority to prescribe fire limits under a charter which conferred upon it the power "to make regulations for the prevention of accidents by fire; to organize and establish a fire department and make and ordain rules for the government of the same; to provide fire engines and other apparatus, and to levy and collect special taxes for that purpose . . . to prevent by all possible and proper means, danger or risk of injury or damages by fire arising from carelessness, negligence or otherwise . . . to adopt proper ordinances for the government of the city, and to carry into effect the powers given by this act . . . and the city of Olympia shall have such other powers and privileges not herein specifically enumerated as are incident to municipal corporations of like character and degree."

We may also refer to the following cases; Alexander v. Greenville, 54 Miss. 659, wherein the court held that the power to establish fire limits was conferred upon a town by a charter which gave to it the authority "to provide for the prevention and extinguishment of fires and to organize and establish fire companies; to regulate the fixing of chimneys and flues thereof, and the manner of using stoves and stovepipes in dwelling houses, stores, offices, warehouses and other buildings in said town; to regulate and order parapet walls and partition fences, and to regulate the storage of gunpowder and other combustible materials."

Charleston v. Reed, 27 W. Va. 681, 55 Am. Rep. 336, wherein the power was implied under a charter which authorized the city "to make regulations for guarding against damage by fire." Hine v. New Haven, 40 Conn. 478, wherein the power was inferred under the authority "to protect said city from fire; to organize, maintain and regulate a fire department and fire apparatus; to regulate the mode of building and the materials used for building or altering buildings within said city or any

part thereof; and the mode of using any buildings therein and of heating the same, when such regulations seem expedient for the purpose of protecting said city from the dangers of fire."

Ford v. Thralkill, 84 Ga. 169, 10 S. E. 600, wherein the power was inferred from the authority "to make regulations for guarding against danger of damage by fire."

Wadleigh v. Gilman, 12 Me. 403, 28 Am. Dec. 188, wherein the power was implied from the general authority "to ordain and establish such acts, laws, and regulations, . . . as shall be needful to the good order of said body politic."

Hubbard v. Medford, 20 Or. 315, 25 Pac. 640, wherein the power was inferred from the authority "to regulate the storage of gunpowder, tar, pitch, resin, and all other combustible materials, and the use of candles, lamps, and other lights in stores, shops, stables, and other places; to prevent, remove, and secure any fireplace, stove, chimney, oven, or boiler, or other apparatus which may be dangerous in causing fire; and to provide for the prevention and extinguishment of fires."

See also McQuillin, Mun. Ord. § 470.

The case of Hudson v. Thorne, supra, indeed, though decided in 1838, seems to have been criticized rather than followed, and to stand by itself. By some its announcement seems to be considered as *dictum* merely. See opinion in Hubbard v. Medford, supra. However that may be, we fail to find any other case where the power is denied under a statute or charter, which gives the authority "to provide for the prevention and extinguishment of fires."

Nor is there any merit in the contention that the establishment of fire limits would be unreasonable in villages, though reasonable in cities; and that the courts must give the legislature credit for a knowledge of the fact. The reverse condition really seems to exist in the state of North Dakota. Too many villages, indeed, have been swept away by fires on our wind-swept prairies for us to be blind to the fact that, where as a matter of necessity adequate water facilities and fire fighting apparatus are difficult, if not impossible, to be obtained, as they are in most of our villages, the danger from fire is even greater than it is in the larger cities, and that the need of proper precautions is even more necessary.

Nor is there any merit in the argument that the village trustees might

connive with and favor the first comers and established business men in the creation of fire districts. The court must presume honesty, and not dishonesty. This presumption of good faith, indeed, which with all our shortcomings is everywhere in America much more than a presumption, is the foundation of our democracy, and without it there would be no social progress.

Nor does the fact that the building in question was not in itself a common-law nuisance prevent the trustees or the court from ordering its removal. The limits of a fire district must necessarily be largely left to the sound discretion of the administrative or legislative body which is authorized to create it.

Nor should a negation of power be based on the fact that the power is granted in clear and specific terms to cities in the so-called Cities and Village Act of 1895 and in chapter 73 of the Laws of 1887, and that this is not true in the case of villages and of the act which is before us. The clause, "and generally to establish other measures of prudence for the prevention or extinguishment of fires as it shall deem proper," first appears in the territorial days and as a part of subdivision 3 of § 22 of chapter 14 of the Session Laws of 1867–1868. The title of the act is "An Act for the Incorporation of *Towns,* Defining Their Powers, Providing for the Election of Officers thereof and Defining Their Duties," and § 22 of the act is identical in words and in phrasing with paragraph 3 of § 3861 of the Compiled Laws of 1913, which is now before us for consideration.

It will be noticed that in the title of this Act of 1867–1868 the generic word "town" is used, and the act seems to apply to all incorporated municipal corporations, no matter of what size. It was not, indeed, until the year of 1887 that there was any general law for the incorporation of cities, and prior to that time all cities which were incorporated as such were incorporated under special charters.

Section 22 of the Act of 1867–1868 was again re-enacted, and in identically the same form, in chapter 10 of the Territorial Session Laws of 1875. Neither in this act nor in the Act of 1867 was the term, "village or city," used, but the generic term "town" merely.

We next come to chapter 24 of the Revised Codes of 1877. There the chapter bears the title, "Incorporation of Towns and Cities," the section before referred to is re-enacted as § 22, and, as before, nowhere

are the words, "city or village," used except in the chapter heading and in § 35, wherein it is provided that a provision regarding the collection of taxes by the marshal "shall not apply to incorporated cities, villages, or towns, for which a different manner is provided by their charter."

Again in chapter 31 of the Session Laws of 1885 we find an act "Providing a Method for Changing the Names of Towns and Villages," and throughout the act the phrase, "town or village," alone is used, and nowhere does the word "city" appear.

Next follows chapter 73 of the Territorial Laws of 1887, which is "An Act to Provide for the Incorporation of Cities," and the first general act as far as cities are concerned. This act appears as chapter 2 of the Political Code of the Compiled Laws of 1887, and begins with § 844. In it is contained the first specific reference to fire limits,—¶ 49 of § 1 of article 4 of the act being ¶ 49 of § 885 of the Code, giving the city council the power "to prescribe the limits within which wooden buildings shall not be erected or placed or repaired without permission, and to direct that all and any buildings within said limit, which shall be known as the fire limits, when the same shall have been damaged by fire, decay, or otherwise to the extent of 50 per cent of the value, shall be torn down or removed, and to prescribe the manner of ascertaining such damage." Nowhere in this act, however, is any general power "to establish other measures of prudence for the prevention or extinguishment of fires as it shall deem proper" granted. The purpose of the enumeration of power seems clearly to have been to define more clearly the general powers given in the prior acts.

At the same session of the legislature we find chapter 106, which amends § 22 of chapter 24 of the Political Code, entitled "Incorporation of Towns and Cities So As to Empower the Trustees to Authorize the Construction and Maintenance of Street Railways, Water Mains and Water Pipes, and Gas Mains and Gas Pipes Along through the Streets and Alleys within the Corporated Limits, etc." This act clearly recognizes the applicability of chapter 24 of the Compiled Laws of 1877 to cities as well as villages, and that the generic term "town" included both, and that chapter 73 of the Laws of 1887, which related to the incorporation of cities, merely applied to those which should thereafter seek to come within its provisions.

Next follows the Revised Codes of 1895, and in them a revision of the Territorial Laws of 1887.

In the act relating to cities and in ¶ 48 of article 4, chap. 28, thereof, being ¶ 48 of § 2148, ¶ 49 of § 885, Comp. Laws of 1887, is re-enacted.

It is also worthy of notice that in chapter 12 of the Session Laws of 1875 by which the city of Fargo was incorporated under a special charter, the same general term is used as in the act that is before us, and that all the council was authorized to do was to provide for the organization and support of fire companies and "to establish regulations for the prevention and extinguishment of fires." See ¶ 26, § 12, article 2.

The same is true of the act incorporating the city of Bismarck. See ¶ 27, § 12, article 2, chapter 11, Session Laws of 1875.

It has been quite common in the history of legislation to use the word "town" as a generic term and as including both cities and villages (see Dunn v. Whitestown, 185 Fed. 585; State ex rel. Hartford v. Craig, 132 Ind. 54, 16 L.R.A. 688, 32 Am. St. Rep. 237, 31 N. E. 352; Klauber v. Higgins, 117 Cal. 451, 49 Pac. 466; 3 Bouvier's Law Dict. 3d Rev. p. 3289; 8 Words & Phrases, pp. 7026, 7817), and we are quite sure that it was so used by the legislatures of both the territory and state of North Dakota. It is, indeed, very apparent to us that during the twenty years which intervened between 1867 and 1887 the legislature did not intend to restrict the city councils of the incorporated cities such as Bismarck and Fargo, or of the growing towns, which, in fact, had assumed the dimensions of cities but had not yet assumed the name, to such an extent that they could not adopt the reasonable precaution of creating fire limits. It is clear to us, also, that when the legislature granted to these municipalities the general power to establish "other means of prudence for the prevention or extinguishment of fires as it shall deem proper," they intended that a general power should be conferred which should include the creation of fire districts, and that the reasonable discretion of the governing bodies should control. See Olympia v. Mann, 1 Wash. 389, 12 L.R.A. 150, 25 Pac. 337, and cases before cited.

Nor do we believe that there is any merit in the contention that the ordinance was arbitrary and unreasonable and discriminating in its nature. It is true that a large portion of the village is not included therein, but such a condition is only what is usual and to be expected.

It is true, also, that outside of the limits there are located a livery stable and a garage, which may, perhaps, communicate fire to the business portions of the city. No fraud, however, is shown in the passage of the ordinance, nor is there any proof of prejudice or ulterior motive, and the evidence is quite persuasive to the effect that the business portions of the city will probably not extend into the omitted territory. There must at any rate be some limits to every fire district, and what these limits shall be is largely a matter of legislative discretion. The trial court found that the ordinance was not discriminating, and we have no reason for interfering with his finding.

But was the court also justified in its conclusion of law that "the building in question not being a nuisance *per se*, this court is without jurisdiction and will not interfere or grant equitable relief by injunction or otherwise to restrain the violation of the ordinance in question, and that the plaintiff is therefore entitled to no relief and the action should be dismissed?" Should, in short, the prayer of the complaint be granted, which asks: "1. That the said building be held to be a nuisance, and that the same be abated according to law. 2. That it be adjudged herein that said building was constructed in violation of the provisions of said ordinance, and that said defendant by mandatory injunction be required to remove said building?" In other words, may a court of equity enforce the provisions of § 2 of the ordinance, which provides that:

"The outer walls of any building or structure hereafter erected within the aforesaid limits of said village of Ashley, which does not comply with the provisions of this ordinance, shall be condemned by the board of trustees of said village as unsafe and a menace to life and property, and shall be by said trustee ordered destroyed and removed under their direction?"

Or is ample relief to be found in § 4 of the ordinance, which provides that:

"It shall be the duty of the village marshal of said village upon his being informed of the fact that any person is erecting or constructing any building or structure of any nature which does not comply with the provisions of this ordinance, or upon being informed that any person is erecting structure of any nature within the said limits of the said village of Ashley without having obtained a building permit thereof as

herein provided for, to at once make complaint before the village justice of the peace of the said village of Ashley, setting forth the facts under oath, and the said village justice shall thereupon issue his warrant for the arrest of any such person, and deliver the same to the said marshal, who shall thereupon arrest such person and bring him before said village justice to be dealt with according to law and according to the ordinance of said village.

"Any person or persons violating the provisions of this ordinance shall upon conviction thereof, before the village justice of the peace of said village, be punished by a fine of ten (10) dollars for each offense, or by imprisonment in the village jail of said village, or such place as shall be provided by said village for such purpose, not exceeding ten (10) days, or by both such fine and imprisonment."

We are of the opinion that a court of equity may properly interpose in the premises.

We are aware of the fact that the trial court held that the building in question was not of such a nature as to make it a nuisance *per se* at the common law. We are also aware of the long line of authority which seems to generally hold that equity will not lend its aid to enforce by injunction the by-laws or ordinances of a municipal corporation, unless the act sought to be restrained is shown to be a nuisance *per se,* and this on the theory that the maintenance of a nuisance is an indictable offense, and if the laws be framed with proper penalties the measure of redress at law will be adequate, effectual, and complete so far as the public is concerned. See Parker & W. Public Health & Safety, § 223; St. Johns v. McFarlan, 33 Mich. 72, 20 Am. Rep. 671; 2 Dill. Mun. Corp. 5th ed. § 650; 2 McQuillin, Mun. Corp. § 806.

In the case at bar, however, the ordinance merely provides for the punishment of one who erects a wooden building within the prescribed limits by a fine of $10, and there is no provision for the destruction or removal of the building except that found in § 2, which provides that the board of trustees may condemn such a building if erected, and order its destruction or removal. We realize, of course, that when a building is constructed in violation of the law and in violation of the mandates of a valid ordinance, it to that extent becomes a nuisance, and may be removed by the municipal authorities, even though it be not what may be known as a common-law nuisance. See First Nat. Bank v. Sarlls,

40 N. D.—34.

129 Ind. 201, 13 L.R.A. 481, 28 Am. St. Rep. 185, 28 N. E. 434.   The penalty prescribed by the ordinance, however, does not extend to the maintenance of the nuisance but to the construction of the building merely, and only one fine of $10 seems to be imposed.   The imposition of this fine would not remove the structure, and the only resort left would seem to be for the municipality to itself destroy or order the same to be destroyed or removed.   The petition alleges that an order for removal was given.   It is, of course, clear that the city could itself remove the building, and then sue the defendant and recover the cost incident to such removal.   In the case at bar, however, this proceeding would have compelled the municipal authorities to have themselves incurred the risk of a suit in damages in case the building was not a nuisance *per se* or the ordinance prescribing the fire limits had not been held valid.

Surely, where there is doubt as to the existence of a power and the fact of a nuisance, the orderly and proper procedure is to have the matter first adjudicated, and to have the rights of the parties first determined, before the property is destroyed or removed.   There can be no question that under the facts which are before us, and in view of the legitimate difference of opinion as to the real law of the case, a court of equity would have issued a preliminary injunction at the suit of the owner of the building, and restrained the destruction or removal of the property until the rights of the parties could be determined, and, if the ordinance had been held invalid, have permanently restrained the destruction or removal of the property.   Parker & W. Public Health & Safety, §§ 105, 108.

We have held that the building in question was erected and is now maintained in violation of a valid ordinance, and is therefore a statutory if not a common-law nuisance.   Surely equity requires that he who constructs such a building shall remove it, or he who maintains a nuisance shall abate it.   It is true that "the only common-law remedy for the abatement of a public nuisance was by indictment, but it is now well settled that a court of equity may, in a proper case, take jurisdiction of public nuisances in civil actions for their abatement, and to enjoin their maintenance.   This jurisdiction is grounded upon the greater efficacy and promptitude of the remedies administered in such actions, enabling the court to restrain nuisances that are threatened or in progress, as well

as to abate those already in existence, and effect their final suppression by injunction, which will often also prevent a multiplicity of suits." Mitchell, J., in Hutchinson Twp. v. Filk, 44 Minn. 536, 47 N. W. 255; Pine City v. Munch, 42 Minn. 342, 6 L.R.A. 763, 44 N. W. 197; 20 R. C. L. 473, 474; 14 R. C. L. 379.

It is true that where the fact of the nuisance is in dispute a jury trial should be permitted and is the proper remedy. Where, however, the matter is one of law, and of law alone, and the only question is the validity of the ordinance defining the nuisance, no such considerations apply and the rule is otherwise.

The question involved is whether a village can maintain a fire district or whether it can not. Must it tolerate the existence of a building within that district which is erected in defiance of its laws? Building Commission v. Kunin, 181 Mich. 604, 148 N. W. 207, Ann. Cas. 1916C, 959.

The judgment of the District Court is reversed, and the cause is remanded with directions to enter judgment according to the prayer of the petition.

BIRDZELL, J. I dissent.

ROBINSON, J. (dissenting). This is an action by the village of Ashley to compel defendant to remove a small office building on the ground that it is within the fire limits prescribed by the village ordinance. The court gave judgment for defendant, and the village appeals.

The building is used for a lumber office. It is 14x20 feet wide with 8-foot posts. There is no showing that it is dangerous to any building. Defendant avers that it is not in any way dangerous to any building, and that the ordinance is unreasonable and void, and that it unjustly discriminates against defendant by reason of the fact that it applies only to the south half and not to the north half of block 13. It is shown that on the north half there is a frame livery barn 50x128 feet, and a frame auto garage 32x100 feet in which gasolene and other inflammable materials are stored, while on the south half of block 13, there is only the small office building and the lumber yard of the defendant. The south half of block 13 is owned and occupied by defendant. It is bounded on the north by a 20-foot alley which separates it from the north half and

on the west by Sixth street, on the east by Seventh street, and on the south by Main street, which is 100-feet wide, and on those streets there are no buildings of consequence facing defendant's property.

The questions presented are: (1) Had the village power to pass an ordinance limiting the right to erect frame buildings? (2) When applied to the building in question and other buildings on block 13, is the ordinance fair and reasonable? (3) Do the facts present a case for equitable relief?

The history and origin of equity jurisprudence show that it was not extended to cats and dogs and other petty matters beneath the just consideration of a sovereign monarch. The original petitions were first addressed to the monarch himself, and then to the high chancellor, who acted as the direct representative of the Crown. The purpose of the monarch and the chancellor was to give relief only in cases of gross fraud, accident, or mistake, and to relieve from the hardships of certain penalties and forfeitures and from some severities of the law; to grant relief only on equitable principles and in cases appealing to the conscience of the chancellor as a court of equity and a court of conscience.

In this case the evidence fails to show any necessity for equitable relief, because the building is so small that it can hardly be called a building any more than a dog house, and then it is so far removed from other buildings that it is in no wise dangerous. The construction of so low and small a building at such a place was at most a technical disregard of the ordinance which does not call for equitable relief, and it should be considered that farmers coming into the little village to buy lumber should not have to go far into the country to find a lumber office. Then it appears that the statute does not, by express words or by necessary implication, give to villages the power to limit the construction of wooden buildings.

Cities are given power "to prescribe the thickness, strength and manner of constructing stone, brick and other buildings and the construction of fire escapes therein, and to provide for the inspection of all buildings within the city limits. To prescribe the limits within which wooden buildings shall not be erected or placed, or repaired without permission." Comp. Laws 1913, § 3599, subds. 46 and 47.

Villages have power "to organize fire companies, hook and ladder companies . . . to provide all necessary apparatus for the extinguish-

ment of fires to make owners of buildings provide ladders and fire buckets, . . . to regulate the storage of gunpowder and other material; to direct the construction of a place for the safe deposit of ashes; . . . to regulate the manner of putting up stoves . . . to prevent out-fires and the use of fireworks and the discharge of firearms, . . . and generally to establish other [such like] measures of prudence for the prevention or extinguishment of fires as it shall deem proper." Comp. Laws 1913, § 3861, subd. 3.

Counsel for plaintiff places great strength upon the concluding phrase, "generally to establish other measures of prudence," etc., as if such words give to the villages the same powers given to cities; but, under a well-known rule of law, the concluding words following and enumerating list of powers refer only to other such like and similar powers.

Villages are often sparsely settled. The buildings are few and cheap and far apart, and, hence, it does not seem that the legislature thought it wise to give villages power to prescribe fire limits. The statute provides that any incorporated village having a population of not less than 500 inhabitants may become an incorporated city. § 3552. Hence, it is an easy matter for a village of over 500 inhabitants to throw off its swaddling clothes and to become a city. Till it does that, it cannot justly claim to exercise the powers of cities or any power not given it expressly or by necessary implication.

The judgment appealed from is clearly right, and it should be affirmed.