McMILLAN v. LIVE STOCK SANITARY BOARD.

[81 South. 169, Division B.]

1. INJUNCTION. *Offenses. Order of live stock sanitary board. Dipping cattle.*

   The legislature has the power to confer on the chancery court jurisdiction to enforce by injunction the lawful orders of the live stock sanitary board.

2. INJUNCTION. *Offenses. Dipping of cattle. Enforcement by injunction.*

   Laws 1916, chapter 167, making it the owner's duty to dip his live stock when so ordered by the inspector and making it a crime to fail to do so, also confer upon the chancery court the power to compel obedience to such lawful orders by mandamus, injunction or any other appropriate remedy.

3. DIPPING OF CATTLE. *Statutes. Repeal.*

   Laws 1916, chapter 167, was not repealed by Laws 1918, chapter 221. The last-named act of the legislature is merely supplementary, to meet the conditions not mentioned in the laws of 1916.

Appeal from the chancery court of Stone county.

Hon. W. M. Denny, Jr., Chancellor.

Bill by Live Stock Sanitary Board against Peter McMillan to enjoin defendant from violating orders of the board. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mize & Mize* and *E. R. Davis,* for appellant.

The bill in this case was drawn to compel appellant to obey the laws and to restrain him from committing a crime. The first contention of appellant is that equity is without jurisdiction of a case of this character, because it is enjoining him from committing a crime, and deprives him of the right to a trial by the jury which is guaranteed him and every one charged with committing a crime by the Constitution of the United States and state, since when appellant violates the law in question, he thereby commits a crime for which there is a complete and adequate remedy at law.

In *"Re Debbs,"* 158 U. S. 564, the supreme court said: "The difference between a public nuisance and a private nuisance is that one affects the public at large and the other only the individual. The quality of the wrong is that courts over them rests upon the same principle and to the same extent . . . Again, it is objected, it is outside the jurisdiction of a court of equity to enjoin the commission of crimes. This, as a general proposition, is unquestioned. A chancellor has no criminal jurisdiction; something more than a threatened commission of an offense against the law of the land is necessary to call into exercise the injunctive powers of the court. There must be some interference, actual or threatened, with property or rights of a pecuniary nature, but when such interferences appear, the jurisdiction of a court of equity arises, and is not destroyed

by the fact that they were accompanied by, or are themselves, violations of the criminal law.''

In that case, there was a strike in Chicago, in which a great number of strikers were congregated together and were interfering with interstate mail and traffic, a case wherein it can be readily seen that the law courts were unable to handle the matter; great throngs of people congregating and conspiring together and interfering with interstate mail and traffic; and the court in that case properly granted an injunction on the ground that it was an interference with public rights of property of a pecuniary nature. But in the instant case there is only one man involved, who the bill alleges refused to dip his cattle; and the act in question has given the courts ample power to fine and imprison him if he violates the act. The bill shows that he has been prosecuted and was still being prosecuted in the criminal courts, and that a case was then pending against him in the circuit court of Stone county carried there by appeal.

The case of *State* v. *Vaughan, et al.,* 81 Ark. 117, was a case where a bill was filed to enjoin the running of a pool room and gaming house near the city of Little Rock in which betting on horses was participated in. The bill was brought by the attorney-general of Arkansas together with the prosecuting attorney of the six judicial circuit and the mayor of Little Rock. The court refused to grant the injunction. In that case, it was shown that the defendant was daily violating the criminal law. The court said: ''Applying these principles, it is seen that the admissions of the answer prove forth to have been daily violating the criminal law, but there is an absence of any showing that the acts constituting a crime reached to the grounds of any equity jurisdiction;'' and in closing said: ''Persons charged with crime are entitled to a jury trial and this

right must not be taken from them under the guise of an injunction against a nuisance.''

In the *Vaughan case, supra,* there are several decisions cited from other states. So we contend that appellant, if he should violate the act, is entitled to a trial by a jury, which right is guaranted him by the Constitution, and that this right cannot be taken away from him under the guise of an injunction.

The appellee has a complete and adequate remedy at law, because every time appellant failed or refused to dip his cattle, he can be indicted, and it would then be for a jury to say whether or not he had failed or refused to dip his cattle. If he had, the court can fine and imprison him each and every time he is found to have violated the law. We are therefore unable to see on what theory the chancery court should take jurisdiction, for, as stated by the supreme court of the United States, it should be a very rare and exceptional case where the chancery court should intervene for the enforcement of criminal law. So we submit that for this reason the demurrer should have been sustained.

Our next contention is that the Act of 1916 in question was repealed by chapter 221, Acts of 1918. When this latter Act was passed in March, 1918, it was provided that it should take effect from and after August 1, 1918. At that time, it was generally understood by the public everywhere that the state was practically free of cattle ticks and that the quarantine should be lifted from all over the state, and some kind of a public meeting was called and held in the city of Jackson, Mississippi, celebrating this event; but, in order to prevent the returning of the tick, the legislature passed chapter 221, Acts of 1918, which provides that any person owning cattle infested with the fever tick should not allow such animal to run at large on the open range, and that such cattle should be confined separate from other cattle and should be dipped; and provided that it should be the duty of any inspector com-

missioned by the live stock sanitary board or any citizen of the country, to notify the owner of any cattle having ticks on them that were running at large, and if the owner failed to confine the cattle and dip them as provided by the said act, it should be the duty of the inspector to cause the animals to be dipped and to prosecute the person who failed or refused to confine and dip such infested cattle and while the legislature did not in specific language repeal the Act of 1916, yet clearly it was the intention of said Act of 1918 so to do and to provide at the same time for the confinement and dipping of cattle that were actually infested.

A statute may be repealed, and frequently is by implication, and where a later act takes hold of the entire subject-matter and deals with it fully, then all prior acts on said subject-matter are thereby appealed by implication. *State* v. *Jenkins,* 73 Miss. 525. In this case, the laws on the subject of cattle ticks and dipping which has been prominent before the people of the state of Mississippi for several years, and which was an excellent law, but which had about served its purpose in 1918, and was an unpopular law with a good many people, was taken hold of by the legislature of 1918, and the Act of 1918, chapter 221, was pased, dealing with the entire subject fully and thereby repealing the former act by implication. 26 American & English Ency. of Law (2 Ed.), p. 731 lays down this rule: So we submit that the said 1918 Act repealed the 1916 Act, and the bill of complaint herein being drawn under the 1916 Act, fails to allege that appellant's cattle were infested with ticks, and therefore the demurrer to the bill should have been sustained.

The state being practically free of ticks in 1918 there was no necessity for the longer and continued use of state wide dipping; it was only necessary that wherever a person's cattle were found to be infested with ticks, he should be and was required to confine said cattle and to dip them until they were found to be

free of ticks, and for failure to comply with this act it was the duty of the inspector to prosecute the owner who failed or refused to comply therewith.

We therefore respectfully submit that the case should be reversed and the demurrer sustained and bill dismissed.

*W. C. Batson,* for appellees.

The state legislature recognizing the great necessity for the eradication of the cattle tick in the state of Mississippi enacted chapter 167 of the Laws of 1916 thereby clothing the state live stock sanitary board with full authority to proceed about said eradication work and providing the machinery by which they were to work and providing for the expenses thereof. Said act also provided penalties for owners of cattle who failed to observe the rules and regulations of the said state live stock sanitary board and their subordinates in the carrying out of the provisions of said act. The section 5 of said act provides the manner in which those who violated said act should be prosecuted and this section specifically says one of the remedies for the enforcement of said act shall be by *injunction.*

The failure of a party to dip his cattle is nothing less than a public nuisance which can be enjoined by a court of equity even though it is a crime that can be otherwise prosecuted. See 15, L. R. A. (N. S.), page 748, and footnote quoting from the case of *State* v. *Vaughn,* 81 Ark. 117, as follows: "It is demonstrably true that it is a sound principle of equity jurisprudence that an injunction will not lie at the instance of the state to restrain a public nuisance, where the nuisance is one arising from the illegal, immoral, or pernicious acts of men, which, for the time being, make the property devoted to such use a nuisance, where such nuisance is indictable and punishable under the criminal law.

On the other hand, if the public nuisance is one touching civil property rights or privileges of the public or the public health is affected by a physical nuisance, or, if other ground of equity jurisdiction exist, calling for an injunction, a chancery court will enjoin, notwithstanding the act enjoined may also be a crime.''

This case is cited by counsellor for appellant and while the decision in this case was that the court did not have the right to enjoin, yet the court also held that it was not a case in which civil rights were involved. While in the case before the court here the appellees insist that it is a case in which the civil rights of the people are involved and a proper case for the court of equity to have jurisdiction over, and especially in the face of the fact that the legislature especially named this remedy a proper one for the enforcement of this law.

The only other contention pressed here by appellant is that the act of 1916 providing for state wide tick eradication was repealed by the Act of 1918, chapter 221, thereof. An examination of the later act shows that the legislature did not specifically repeal the Act of 1916, then the question is, did the later act repeal the former by implication. It is our contention that it did not and that the Law of 1918 was passed for the purpose of providing an additional remedy whereby the state live stock sanitary board could more effectively carry out the provisions of the Act of 1916. Counsel for appellant want to ask this court to take notice of an unofficial meeting at Jackson, Mississippi, at which meeting there was some sort of demonstration celebrating the raising of the quarantine of cattle in Mississippi. We have just as much right to ask this court to look to the fact that at the very time of said meeting there were districts and whole counties in the state still under quarantine of the state live stock sanitary board for the reason that such districts

were still infested with cattle tick and that such is true at this very time and in order for the state live stock sanitary board to effectively carry out the provisions of the Law of 1916 they needed the additional legislation provided by the Act of 1918.

It is the contention of the appellees that the Act of 1918 did not even by implication repeal the Act of 1916 and that both said acts are in force and effect at this time, the remedies of which may be used as best suits the situation by the state live stock sanitary board; that the lower court was correct in overruling the demurrer in this cause and not sustaining the motion to dissolve the temporary injunction and that this injunction should be made permanent.

Cook, J. P., delivered the opinion of the court.

This is an appeal from the chancery court of Stone county, Miss. Appellees were granted a mandatory injunction compelling Peter McMillan, appellant, to dip his cattle, under the supervision of the state live stock sanitary board.

Appellees filed a bill of complaint, setting up that they were the proper parties to bring the suit, and that the bill was filed under Laws Miss. 1916, chapter 167; that the board of supervisors of Stone county, acting under the said law of 1916, had dipping vats at convenient places for cattle owners to reach and dip their cattle; that Peter McMillan, appellant, was required to dip his cattle under the direction of the state live stock sanitary board under said law of 1916, and that he had been obstinate and adverse to the orders and notices to dip his cattle, and had been prosecuted a number of times for failure to dip his cattle, and would ask the mercy of the justice court and get off with a light fine; that he was convicted September 25, 1918, for failure to dip, in the justice court, and appealed to the circuit court of said Stone county;

that the district in which said Peter McMillan lived had been quarantined and was located in tick-infested territory; that October 9, 1918, was a regular dipping day, which had passed, and that said McMillan had neglected and refused to dip his cattle on that date, as he was required to do, and that there are designated times in the future at which appellant would be required to dip his cattle; and alleged that it was necessary that all cattle owners should strictly comply with the Act of 1916 in reference to cattle dipping in order to eradicate the tick; that the remedy by prosecution in the courts of law had been exhausted, and it was necessary for appellees to resort to a court of equity for relief to save the county of Stone and its people untold trouble and expense before they can be relieved from the burden of cattle ticks; and prayed for a mandatory injunction compelling the appellant to dip all of his cattle under the direction of the state live stock sanitary board and duly qualified authorities.

The appellant filed a demurrer to the bill of complaint, and motion to dissolve; his grounds of demurrer being:

(1) Equity has no jurisdiction, and the writ of injunction will not lie, because it is an attempt to enjoin defendant from committing a crime, if failure to dip cattle under the allegations of said bill is a crime.

(2) If defendant's failure to dip, as alleged in the bill of complaint, is a violation of the law, it is a crime for which the defendant is subject to fine and imprisonment, and therefore the legislative act permitting an injunction is unconstitutional because the defendant has a right to trial by jury.

(3) The injunction is an attempt to enforce a criminal act in chancery.

(4) The bill does not allege that the territory is tick-infested.

(5) There was no equity on the face of the bill.

(6) Complainants have a complete and adequate remedy at law.

(7) That the Acts of 1916 chapter under which bill of complaint was drawn, has been repealed by the Acts of 1918 of the legislature.

In the opinion of the court there is no doubt that the legislature has the power to confer upon the chancery court jurisdiction to enforce by injunction the lawful orders of the live stock sanitary board.

This being settled, the only thing left for our decision is: Did the legislature give this power to the board, and do the facts expressed by the record present a case justifying the issuance of an injunction?

Mr. McMillan was notified by the inspector to dip his live stock, and he failed and refused, and still fails and refuses, to do so. Chapter 167 of the Laws of Mississippi, of 1916 made it his duty to dip his live stock whenever he was ordered to do so by the inspector, and for his failure to do so he could be fined by the criminal court, and he can also be compelled to perform his duty by "mandamus, injunction or any other appropriate remedy."

Taking the statute by its four corners, it seems clear to us that the legislature was impressed with the importance of the enforcement of this law, and, realizing that the local justices of the peace, inspectors, and owners of live stock might fail or refuse to co-operate in carrying out the legislative purposes, they conferred upon the chancery court the power to enforce the performance of all the duties imposed upon officers and individuals as well.

The legislature was in real earnest, and in those localities where the tick was regarded as the innocent victim of man's meddlesomeness the legislature imposed duties upon individuals and conferred upon the chancery court the power to compel the performance of these duties.

The appellant also insists that chapter 167, Laws of 1916, was repealed by chapter 221, Laws of 1918. We. do not think so. The last-named act of the legislature is merely supplementary, to meet conditions not mentioned in the laws of 1916.

*Affirmed.*