[Civ. No. 3496. Third Appellate District.—July 27, 1928.]

CITY OF STOCKTON (a Municipal Corporation), Appellant, v. FRISBIE & LATTA (a Copartnership) et al., Respondents.

J. LeRoy Johnson, Nutter, Hancock & Rutherford and A. P. Hayne for Appellant.

Lafayette J. Smallpage, Gilbert Jones and Charles H. Epperson for Respondents.

HART, Acting P. J.—The city council of the City of Stockton, operating as a municipal corporation under and by virtue of the authority of a freeholders' charter, adopted by the electors of said city at a special municipal election held on the twenty-eighth day of November, 1922, and approved by the legislature at its session of 1923 (Stats. 1923, p. 1321 et seq.), "duly adopted and passed," as the complaint alleges, "Ordinance No. 858, which went into full force and effect on December 13, 1923, whereby there was created in said city certain residence and certain non-residence zones."

Among the specifically enumerated powers vested by said charter in the City of Stockton as a municipal corporation is the authority or power "to zone the city as relates to the *use of property*" (charter, sec. 16, art. 3, Stats. 1923, p. 1334), and it was in pursuance of the power so vested in said city that the legislative body thereof passed the ordinance above named.

The provisions of said ordinance are as follows:

"Section 1—The City of Stockton is hereby divided into zones or districts to be known respectively as non-residence districts and residence districts, as follows:

"(A) Non-residence zones or districts shall comprise:

"(1) All lands which at the time this ordinance goes into effect are used for any business or industry other than farming, truck gardening, growing of trees, shrubs, vines or plants, the raising of animals, professional or other customary home occupations conducted by a family within its residence, and the conduct of a boarding or lodging house not primarily for transient guests; and,

"(2) All lands located and fronting upon any section of any street which lies between the outer lines of two successive intersecting streets whether said streets cross the former street or not, and in which not less than one-half of the ground floor yardage on either side of said street is at said time devoted to business or industry or is manifestly intended to be so used.

"(B) Residence Districts shall comprise areas not included in non-residence Districts.

"Section 2—Except as hereinafter provided no parcel of land lying in a residence distirct and not at said time devoted to any business or industry, other than those specified in Section 1, shall hereafter be used therefor, and no permit shall be issued for the erection, alteration or conversion of any building for or to such use upon such parcel.

"Section 3—A permit may be issued for the erection in a Residence District of a building for the purposes of any business or industry, or for the alteration or conversion of a building in such district for or to such purposes, provided that there be filed with the application for SUCH permit written consents thereto signed and acknowledged by the owners or legal representatives of the owners of not less than three-fourths of all lands used for other than business or industrial purposes, which front on the same side of the street and which lie between the two intersecting streets nearest to and on either side of the land in question or within four hundred feet on either side thereof in case the nearest intersecting street is more than that distance therefrom, and also of all lands fronting upon the other side of the street and directly opposite said land, and of all lands

immediately in the rear thereof; and provided further that the City Council shall after public hearing so order.

"Section 4—The invalidity of any part of this ordinance shall not invalidate any other part thereof.

"Section 5—That all ordinances and parts of ordinances inconsistent herewith are hereby repealed.

"Section 6—This ordinance shall be in full force and effect thirty (30) days from and after its final passage and approval."

The complaint, among other averments, alleges:

"The said defendants are the owners of an interest in that certain property known as the 'Kilmer House,' located on lots 1, 3 and 5, Block 130 East of Center Street in the City of Stockton, County of San Joaquin, State of California. Said property is in a residential zone and has been used exclusively for residential purposes.

"The defendants, Frisbie and Latta, are now and for a long time past have been engaged in the undertaking business and as an incident thereto have owned and maintained a Funeral Parlor as well as hearses, caskets and other property and apparatus necessary in the conduct of said business.

"Said defendants, without obtaining the permit required by Ordinance No. 858, have commenced and are continuing to convert the use of the building described above as the 'Kilmer House' from a residence to that of a Funeral Parlor and in the furtherance of that purpose have moved funeral apparatus into said building and have placed thereon a sign entitled 'Frisbie & Latta Funeral Home,' and, unless restrained by this court until the requisite permit is obtained, will continue to use said building in the undertaking business.

"Said defendants have never applied for the necessary permit to convert the above described property from a residential to a business use, nor have they obtained the written consents of the owners of not less than $\frac{3}{4}$ of all lands used for other than business or industrial purposes, which front on the same side of the street and which lie between the two intersecting streets nearest to and on either side of the land in question, nor of the lands fronting upon the other side of the street directly opposite said land and of all lands immediately in the rear thereof, nor

have they obtained from the City Council, after a public hearing, a permit so to do.

"The defendants have commenced to maintain and, unless enjoined by this court, will continue to maintain the funeral business on the property above described, and in violation of the ordinance hereinabove referred to.

"The maintenance and operation of a business on the property hereinabove described constitutes a conversion of the use of said property from residential to business uses and constitutes a violation of Ordinance No. 858 of the City of Stockton, since no permit as required by said ordinance has been obtained by the said defendants to so convert the use of said property."

The prayer is for an order temporarily restraining "the defendants or either of them" from using the property described in the complaint for business purposes, and "after a hearing the said restraining order may be made perpetual," etc.

The ordinance involved herein and annexed to the complaint is thereby expressly made a part thereof.

It should here be explained that there is a companion case to this case, entitled, "*Louis Sapiro and Flora Sapiro* v. *Frisbie & Latta*," etc., *post,* p. 299 [270 Pac. 280], the defendants being the same as in the present case, and that the complaint in the Sapiro case contains an averment, which is not in the complaint filed herein by the city, to the effect that after the passage of Ordinance No. 858 (the ordinance in question) the city council passed an ordinance whereby section 3 of Ordinance No. 858 was amended so that, in the place of providing, as in its original form it did provide, that "the city council shall, after public hearing, so order," provides "that such proposed erection, alteration or conversion be approved by the city manager." By a written stipulation between counsel for the respective parties and filed with the records here of the two cases, this court is authorized to consider both cases as one, the points involved in both, with the exception of a few questions rather subsidiary to the principal points, being the same.

The defendants interposed a demurrer to the complaint upon both general and special grounds. Included in the special grounds of demurrer is this: 1. That the complaint fails to show that the plaintiff (City of Stockton) is au-

thorized, in anywise or at all, to commence or maintain this action, and hence is without "legal capacity to sue herein."

The demurrer was sustained, without leave to amend. From the judgment dismissing the action after demurrer sustained, the plaintiff appeals.

The propositions submitted for solution by the present appeal, stating them in the order in which they are presented in the brief of defendants, are: 1. That, assuming that the ordinance in no particular or manner offends either the federal or state constitution, injunction will not lie to prevent the commission of acts prohibited thereby; 2. That, likewise assuming, the City of Stockton is not entitled to invoke the remedy by injunction against the violation of its provisions; 3. That said ordinance is unconstitutional for these alleged reasons: (a) That the authority sought to be conferred by section 3 thereof upon the city council to issue a permit for the erection of a building within the limits of a residence district for the purposes of any business or industry, etc., upon the conditions specified therein involves the delegation of legislative powers; (b) That the ordinance violates the fourteenth amendment of the federal constitution, "in that there is a taking of private property without due process of law or compensation therefor"; (c) That it involves "an unlawful exercise of the police power"; 4. That the ordinance is invalid because it "was improperly passed, in that the council failed to follow the procedural requirements of the Enabling Act of 1917." (Stats. 1917, p. 1419.)

The briefs of counsel representing the respective parties are quite voluminous and the points raised and discussed herein are pressed, *pro* and *con,* with vigor and obvious earnestness. We shall not attempt to follow strictly the ramifications of the arguments of counsel, but shall content ourselves with a statement of the reasons which have led us to the conclusion that the City of Stockton, as a municipal corporation, is legally authorized to maintain this action, that the ordinance in question in no manner or particular offends any provision either of the state or federal constitution and that the city council, in adopting and passing said ordinance, substantially, if not strictly, followed the procedure prescribed by the charter of the City of Stockton for the adoption or passage of city ordinances. Indeed, the reasons for supporting the conclusion herein arrived at upon

all the major points presented have been so frequently explained or expounded by the cases that, in showing that neither the legal propriety of the City's position as plaintiff in the action nor the ordinance itself is obnoxious to the objections urged by the respondents against it, it will be sufficient to go no further herein than to refer to and adopt a few excerpts from the opinions in those cases. It will be convenient to consider these two propositions together, to wit: 1. Whether injunction will lie to prevent the commission of acts in disobedience of the terms of the ordinance; 2. Whether the city is legally eligible to maintain this action.

The ordinance in controversy represents the exercise by the City of Stockton of the police power. The right to exercise this power by the cities and towns of the state is expressly granted by section 11 of article XI of the constitution. That section of our organic law reads:

"Any county, city, town or township may make and *enforce*, within its limits, all such local, police, sanitary and other regulations as are not in conflict with general laws."

The ordinance in controversy, as will be observed, itself does not declare that a violation of its terms shall constitute a crime, nor does it provide a penalty for such violation. This, however, does not render the ordinance an illegal enactment or unenforceable through the agency of an appropriate civil remedy. (*Matter of Ellsworth,* 165 Cal. 677 [133 Pac. 272]; see, also, *C. & E. I. R. R. Co.* v. *Hines,* 82 Ill. App. 488, and cases therein cited.) But counsel for the respondents extra-judicially state in their brief that a building ordinance of the City of Stockton "provides a penalty for occupying, altering or constructing any business building without having first obtained a permit so to do," and that the penalty so prescribed applies to the ordinance in question. The complaint makes no reference to such an ordinance and, of course, we cannot take notice of any matter *dehors* the record. We are not reluctant to say, however, that, even if the ordinance itself expressly prescribed a penalty for the violation of its terms, we would still be firmly of the conviction that thus there would not be afforded an adequate remedy at law to prevent the commission of acts prohibited thereby. The obvious object of the ordinance is to promote and preserve the comforts of home life as against interference by the ceaseless humdrum,

confusion, and other discomforting elements essentially characteristic of the business marts, as well as against the invasion of duly established residential districts by industrial enterprises which, although in themselves legitimate and necessary, would, from their very inherent nature, operate as a positive menace to the peace, comfort, and, in some instances, the health of the inhabitants of such district, and also to the serious detriment of their property rights. It is perfectly clear that any remedy short of one having the force and effect practically of stalling a violation of the ordinance before the infliction of the mischief which it is its paramount purpose to prevent, or of forcing a removal of the cause of the damage after it has been done, would render the measure utterly impotent for the achievement of the ends of its adoption and passage. To be compelled, in a case such as this, to rely for relief upon the uncertain results of the trial of a criminal case, with the usual delays occasioned by appeals, etc., would not, it is very certain, afford that speedy and adequate remedy which the nature and the object of the ordinance involved herein, would, in justness, demand, in the case of a violation of its provisions. Furthermore, the imposition of a penalty upon a violator of an ordinance, even though it be by imprisonment (which could be under a municipal ordinance nothing higher than as for a misdemeanor) would not itself have the effect of removing the prohibited building or necessarily to stop the inhibited business. (*Village of Ashley* v. *Ashley Lumber Co.*, 40 N. D. 515 [169 N. W. 87, 91, 92].) But this immediate discussion is academic rather than necessary to the decision of the point in hand, since the ordinance, so far as this record shows, has no provision prescribing a penalty for the violation of its terms. Yet, as has been shown, it is a valid ordinance, and it would certainly come as a shock, even to the commonest understanding, if it were necessary to concede that its purpose is not subject to coercive execution, if its mandates be violated, by or through some means afforded by our system of remedies and remedial rights.

But counsel for the respondents insist that the complaint fails in the statement of a case for the relief thereby demanded because it contains no allegation that "the proposed business of defendants will be a nuisance, (or) that plaintiff has any property rights or interests which might be preju-

diced by acts of the defendants (or) that the alleged violation of the statute affects either civil rights or property interests of the people of Stockton at large.'' These propositions are not supported by the authorities. In 5 Pomeroy on Equity Jurisprudence, second edition, section 1894, it is said:

''While the right of the government to obtain an injunction to restrain criminal acts is not confined strictly to cases of nuisance, it would seem that it should be limited to cases closely analogous. Such relief, if applied to criminal acts in general, would supersede the criminal law and deprive parties of the right to a jury trial. *Where the property rights of many citizens are involved, it is proper for the government, on their behalf, to invoke the powers of equity;* and it would seem that only in such a case should the jurisdiction be assumed.''

In the case of *In re Debs,* 158 U. S. 564 [39 L. Ed. 1092, 15 Sup. Ct. Rep. 900], it is said:

''Every government, entrusted by the very terms of its being with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of ·the one and the discharge of the other, *and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter.* The obligations which it is under to promote the interest of all and to prevent the wrongdoing of one resulting in injury to the general welfare is often of itself sufficient to give it a standing in court.''

Our own supreme court, in *Miller* v. *Board of Public Works,* 195 Cal. 477, 487 [38 A. L. R. 1479, 234 Pac. 381, 384], declared:

''It is conceded, as indeed it must be, by the opponents of the ordinance in controversy here that it is within the police power, by zoning, to banish nuisances and 'near-nuisances' from certain districts. It is disputed, however, that the police power may be extended by any zoning ordinance, comprehensive or otherwise, to the regulation and isolation of vocations, business enterprises, and residential uses which are not intrinsically obnoxious. A perusal of the decisions in California, which have upheld the prohibition and segregation of certain businesses by means of zoning, indicates that the court has not limited the power to zone to nuisances *per se,* and has held that certain business estab-

lishments, harmless in themselves, may become 'near-nuisances' because of the character of the neighborhood in which they are operating. In *Ex parte Quong Wo*, 161 Cal. 220 [118 Pac. 714], the court justified the exclusion of a certain type of laundry from a residential district upon the theory that a laundry is 'of such a nature that it may be confined, in the lawful exercise of the police power, within defined limits in a city.' This is tantamount to saying that whenever the recognized purposes for which the police power may be called into play are subserved, either by exclusion or segregation of any business, it may be thus regulated. This is but another way of saying that any zoning regulation is a valid exercise of the police power which is necessary to subserve the ends for which the police power exists, namely, the promotion of the public health, safety, morals, and general welfare. It will thus be seen that the police power as evidenced in zoning ordinances has a much wider scope than the mere suppression of the offensive uses of property (*Des Moines* v. *Manhattan Oil Co.*, 193 Iowa, 1096 [23 A. L. R. 1322, 184 N. W. 823, 188 N. W. 921]), and that it acts not only negatively but constructively and affirmatively for the promotion of the public welfare. (*Bacon* v. *Walker*, 204 U. S. 311 [51 L. Ed. 499, 27 Sup. Ct. Rep. 289, see, also, Rose's U. S. Notes].)"

In *Micks* v. *Mason*, 145 Mich. 212 et seq. [9 Ann. Cas. 291, 11 L. R. A. (N. S.) 653, 108 N. W. 207], the court said: "Not in all cases has the right to abate been rested on the ground that a building not constructed in compliance with the ordinance is a nuisance *per se*, but in some it has been deemed sufficient to say that the building so erected was erected in defiance of law; but whatever the reasoning adopted, the right has been affirmed."

This language is approved in *Detroit* v. *Kunin*, 181 Mich. 604 [148 N. W. 207].

In *City of Aurora* v. *Burns*, 319 Ill. 84, 95 [149 N. E. 784, 788], a case, precisely similar to the one before us, in which an injunction, sued for by the city, to prohibit a violation of a zoning ordinance, was sustained, the court said: "Zoning necessarily involves a consideration of the community as a whole and a comprehensive view of its needs. An arbitrary creation of districts, without regard to existing conditions or future growth and development, is not a proper exercise

of the police power and is not sustainable. No general zoning plan, however, can be inaugurated without incurring complaints of hardship in particular instances. . But the individual whose use of his property may be restricted is not the only person to be considered. The great majority, whose enjoyment of their property rights requires the imposition of restrictions upon the uses to which private property may be put, must also be taken into consideration. The exclusion of places of business from residential districts is not a declaration that such places are nuisances, or that they are to be suppressed as such, but it is a part of the general plan by which the city's territory is allotted to different uses in order to prevent, or at least to reduce, the congestion, disorder and dangers which often inhere in unregulated municipal development.''

In addition to the foregoing authorities, attention may be called to the following cases which discuss the principles involved in the present consideration and support the cases above cited: *City Council of Baltimore* v. *Scott,* 131 Md. 228 [101 Atl. 674]; *McMillan* v. *Live Stock Sanitary Board,* 119 Miss. 500 [81 South. 169]; *Inhabitants of Skowhegan* v. *Heselton,* 117 Me. 17 [102 Atl. 772]; *Board of Health of City of Grand Rapids* v. *Vink,* 184 Mich. 688 [151 N. W. 672]; Story on Equity Jurisprudence, secs. 863, 929, 948 and 956b.

By the above authorities it is thoroughly established that a municipal corporation or a county or a township may, in certain instances, by direct action on its part, invoke an appropriate civil remedy to coerce obedience to the mandates of its ordinances or regulations adopted in the exercise of the police power as expressly granted to it by the constitution. (Art. XI, sec. 11, Const.) And, it is worthy of note, that said provision of our organic law does not expressly limit such city, town, etc., to the adoption of any particular mode for enforcing such regulations. The language of the section in that particular is general. It says that any county, city, town or township may make local, police, sanitary and other regulations, and that such *city or town may enforce* the same, how or by what particular means the section does not declare. Thus it would seem that it is left for such corporation or town or county to determine for itself the particular mode for enforcing such regulations within its limits. Of course, the means of enforce-

ment, whatever the nature thereof, must be reasonable and should be suitable to the nature of the ordinance or the effect of the violation thereof upon the personal and the property rights of the inhabitants of such city or town. ■ But it is too clear, both upon principle and the authorities, of which many are above named, to require further discussion, that where the personal welfare and the property rights of a large number of the inhabitants of a city or town would be detrimentally affected by a violation of a police or sanitary regulation, whether the ordinance provides other means for its enforcement or not, such city or town may itself appeal to a court of equity by means of the forceful and singularly effective writ of injunction (preventive, if the violation is merely threatened or attempted—mandatory, if the violation has already occurred) to restrain such violation or to cause the wrongful effect thereof to be removed.

■ It cannot for a moment be doubted, in the face of the innumerable authorities, of which a few are above referred to, upholding zoning ordinances dealing with different specific subject matters as representing the legitimate exercise of the police power of the state, where that attribute of sovereignty has been by the people through their constitution imparted to cities, towns and other local political subdivisions of the state, that, as an abstract proposition, such cities, towns, etc., may, by a resort to such power, adopt and pass ordinances restricting certain districts thereof exclusively to residential purposes or uses and other districts thereof to business and industrial uses only. The only valid objection that may be found and urged to such regulations would be as to the manner in which such power has therein been invoked or attempted to be invoked. And, it is upon this theory, as is explained above, that the point first made by the defendants here as in impeachment of the constitutional validity of the local measure in question is founded—that is, the contention that by section 3 the city council has delegated, or attempted to delegate, to certain owners of the real property embraced within the residential district involved in this litigation a function purely legislative or which alone is a legislative attribute, in (as counsel assert) that thereby it is left to the discretion of such real property owners to determine definitively whether, in certain instances, exceptions may be recognized and allowed to the operation of the

prohibitory terms of the measure, whereby business enterprises may be established and maintained within the limits of said district. It is further contended, as seen, that, if the hypothesis thus advanced be sound, then the whole ordinance, being "tarred with the same stick," is, therefore, absolutely void. These questions must be determined upon a construction of the language of the ordinance.

The real question thus propounded, stated in general terms, is whether it is within the constitutional competence of a city, through its governing or legislative board, and in the exercise of its police power, to leave to the exclusive determination of certain selected and designated real property owners the authority to compel other property owners in the same city to use their real property in a particular manner or for a particular purpose; or, stating the proposition in another form, whether the city council of a city may, by ordinance, in the exercise of its police power, confer upon certain owners of real property lying in a particular locality or district of the city the legal authority to deny, in effect, to other owners of real property lying in the same locality or district the right to devote such real property to such legitimate purposes or uses as may please them.

Counsel for the defendants cite a large number of cases which hold invalid zoning ordinances purporting to vest in the owners of certain quantities of the lands embraced within the boundaries of the district in the city constituting the zone the right to determine whether the operation of the prohibitory provisions of such ordinances may, in any given case, be suspended and so permit to be done that which is prohibited. The cases so cited are: *Eubank* v. *City of Richmond,* 226 U. S. 137 [Ann. Cas. 1914B, 192, 42 L. R. A. (N. S.) 1123, 57 L. Ed. 156, 33 Sup. Ct. Rep. 76]; *Levy* v. *Mravlag,* 96 N. J. L. 367 [115 Atl. 350]; *City of Utica* v. *Hanna,* 202 App. Div. 610 [195 N. Y. Supp. 225]; *State ex rel. Nehrbass* v. *Harper,* 162 Wis. 589 [156 N. W. 941]; *Wasilewski* v. *Biedrzychi,* 180 Wis. 633 [192 N. W. 989]; *Spann* v. *City of Dallas,* 111 Tex. 350 [19 A. L. R. 1387, 235 S. W. 513]; *In re Quong Woo,* 13 Fed. 230; *People ex rel. Friend* v. *Chicago,* 261 Ill. 16 [Ann. Cas. 1915A, 292, 49 L. R. A. (N. S.) 438, 103 N. E. 609]; *Willison* v. *Cooke,* 54 Colo. 320 [44 L. R. A. (N. S.) 1030, 130 Pac. 828]; *Tighe* v. *Osborn,* 149 Md. 349 [43 A. L. R. 819, 131 Atl. 801]; *Wet-*

*heimer* v. *Schwab,* 124 Misc. Rep. 822 [210 N. Y. Supp. 312]; *Coon* v. *Board of Public Works,* 7 Cal. App. 760 [95 Pac. 913]; *Ex parte Sing Lee,* 96 Cal. 354 [31 Am. St. Rep. 218, 24 L. R. A. 195, 31 Pac. 245]; *Yick Wo* v. *Hopkins,* 118 U. S. 373 [30 L. Ed. 220, 6 Sup. Ct. Rep. 1064, see, also, Rose's U. S. Notes].

On the other hand, the following cases sustaining the validity of ordinances whose provisions are substantially the same as those considered in the cases cited by the defendants, of which a few are named above, are cited by the plaintiff: *Myers* v. *Fortunato,* 12 Del. Ch. 374 [110 Atl. 847]; *City of Spokane* v. *Camp,* 50 Wash. 554 [97 Pac. 770]; *City of Chicago* v. *Stratton,* 162 Ill. 494 [53 Am. St. Rep. 325, 35 L. R. A. 84, 44 N. E. 853]; *United States ex rel. Early* v. *Richards,* 35 App. D. C. 540; *Building Inspector of Lowell* v. *Stoklosa,* 250 Mass. 52 [145 N. E. 262]. Another case upon which the plaintiff relies is *Cusack Co.* v. *City of Chicago,* 242 U. S. 526 [Ann. Cas. 1917C, 594, L. R. A. 1918A, 136, 61 L. Ed. 473, 37 Sup. Ct. Rep. 190].

It would accomplish no useful purpose to review in detail herein the above cases. It is enough to say generally that many of those cases involve ordinances establishing zoning restrictions or regulations and which provided that their prohibitory provisions could be modified where the mere consents of the owners of designated quantities of the lands situated within the district are obtained. And it may be added that it is held in those cases (cited by the defendants) that the vesting in certain owners of real property embraced within the districts or zones to which the regulations applied the right and the discretion of denying to other owners of like property situated in the same district to use their property for any legitimate purpose which they desired to use it not only involved an unauthorized delegation of legislative power but that the effect of such discretion, when asserted, would be to deprive the latter of their property or property rights without due process of law. The reasoning in all the cases cited by defendants revolves around various considerations which support the conclusions arrived at. The conclusions arrived at in the cases cited by the plaintiff are directly adverse to those announced in the cases relied upon by the defendants here. The cases cited by the plaintiff hold that where, as in those instances, the operative

effect of a law or city ordinance was not made to depend upon the vote or act of the people, and the law or ordinance in and of itself is complete, as it was held to be true in those cases, the fact that such law or ordinance "provides for the removal or modification of its prohibition by the act of those most affected thereby does not make it a delgation of legislative powers." (*Myers* v. *Fortunato, supra.*) In that case the ordinance provided that no permit shall be granted for the erection or alteration of any building "intended for use as a public garage in the residential portion of the city of Wilmington, within forty feet of the building line of any and all adjoining property owners, unless the written consent of all such adjoining owners has been filed with the building inspector." The ordinance in the present case, however, goes much further than the ordinances considered in the cases cited by the attorneys for the respective parties herein. This statement is not approved by counsel for the defendants, their claim being that when the written and acknowledged consents of the owners of the requisite amount of real property embraced within the zone have been filed with an application for a permit with the city council, there is then no other alternative left to that body but to grant the permit—that is to say that, such consents having been duly filed according to the terms of the section, there is then no discretion vested in the city council by said section to. reject the application or disallow the permit. Section 3 of the ordinance, it may be conceded, is not, in the respect here being considered, clearly expressed. If it be true that the section in the particular referred to is not free from ambiguity, yet it would not follow that its true meaning and intent may not be ascertained upon a fair consideration thereof by the light of established canons of construction.

Where it is obvious from the face of the statute or an ordinance, under attack on constitutional grounds, that it would, if enforceable and when enforced, promote and conserve the welfare of the people, or that portion thereof to be affected thereby, the courts, in construing the same, where construction is necessary to ascertain its designed intent as to a particular vital provision thereof, must give to the language of the measure, if rationally it can be done within the general purport and the spirit thereof, such an interpretation as will make it harmonize with the mandates of our con-

stitutions and with the fundamental guaranties which those great primary laws of the land vouchsafe to the people. And, in approaching such an investigation, in such a case, the courts must do so in a spirit of friendliness rather than of antagonism toward the statute or ordinance and upon the assumption that the statute or ordinance was enacted or passed in good faith. By the light of these and other principles whereby courts are governed in the construction of statutes, municipal ordinances or other writings, we will proceed to consider and determine the question whether section 3 of the ordinance is unconstitutional, and, if so, whether the entire ordinance is by reason thereof rendered invalid.

 It seems plain to us, after a careful examination of the language of section 3 of the measure, that the intention was thereby to vest the council with the power or discretion of determining, upon the application for a permit, and the written consent of the owners of the indicated quantities of the real property in a residence district, whether such permit shall or shall not be granted or issued. In support of this conclusion, we first emphasize the proposition that the application for the permit must be made to the city council, and by that body the permit must, if at all, be issued. Again, we note the fact that the language of section 3 is that a permit "may" be issued, etc., thus indicating that the intention was to vest in the council a discretion in disposing of the application, exercisable either favorably or unfavorably to the application, according to the course which that body may deem to be the proper one under all the circumstances. That the verb "may," as so employed, was purposely used in its permissive or natural sense cannot for a moment be doubted, when we keep in mind the grave consequences which might follow the granting of a permit in particular cases and the further consideration that some of the owners of real property in the district might not themselves reside therein, and who themselves might own sufficient of such real property to lay the foundation for the issuance of a permit and who might be governed, in consenting to the permit, more by motives of self-aggrandizement than by seeing the district maintained according to the prime purpose of its segregation from those districts allotted by the ordinance to the prosecution of the business and industrial activities of

the city. Lastly, as seen, section 3 in effect provides for a public hearing of the application. This can only mean, if an absurd view of that provision is not to be indulged (and, of course, it is not), that the council must conduct a *public hearing*, and that interested parties may thereat appear before that body and advocate or oppose the issuance of the permit. If this be not a correct view of that provision, or not the meaning or intent thereof, then why a public hearing, or any hearing at all? And what is a *hearing* in a juridical sense but the taking of testimony or the reception of other evidence or the presentation of arguments upon the issue to be decided by the tribunal vested by law with the power or jurisdiction to decide it one way or the other? We do not think that it would be a far-fetched construction of section 3 to hold that the hearing provided for thereby was not intended to be anything more than merely of an advisory nature. In other words, it would be no overdrawn construction of that section to hold that the city council would not be bound by any showing made at the hearing, but would still have the discretion of determining, upon its own independent judgment, based upon its own knowledge of the general situation, whether the application for the permit should or should not be granted. But whether the last stated proposition does or does not involve the true construction, it is, at any rate, perfectly clear from the language of section 3 that the intention was that the ultimate decision of the question whether an exception to the operation of the prohibitory provisions of the ordinance should be allowed should rest in the discretion of the council, and that, therefore, said section or the ordinance is not justly subject to the criticism that it involves a delegation of legislative power to the owners of property lying within the residence districts. ██ And it may pertinently be added here that it has been uniformly declared by the cases that the reservation to itself of such discretionary power by the governing boards of municipal corporations in dealing with police regulations of the same general nature as those with which we are here concerned does not have the effect of depriving the persons affected thereby of any of the guaranties either of the federal or state constitutions. (See *Ex parte Fiske,* 72 Cal. 125 [13 Pac. 310]; *Robinson* v. *Otis,* 30 Cal. App. 769 [159 Pac. 441]; *Wilson* v. *Eureka City,* 173 U. S.

32 [43 L. Ed. 603, 19 Sup. Ct. Rep. 317, see, also, Rose's U. S. Notes]; *Gorieb* v. *Fox,* 274 U. S. 603 [53 A. L. R. 1210, 71 L. Ed. 773, 47 Sup. Ct. Rep. 675].) ▮ Those cases further well say that there is no presumption that the power or discretion vested in a city administrative board to make exceptions to an ordinance such as we have here will be arbitrarily exercised, but if in any case it is so exercised, and it is sufficiently so made to appear, the courts will not hesitate to extend their protective aid to the parties so discriminated against.

▮ But, if it were necessary to concede that the foregoing construction of section 3 is unsound, there is yet another consideration in connection with the present inquiry which would remove the principal ground of objection to the measure. It is this: That section 3 is obviously separable and severable from the prohibitory provisions of the ordinance and may be taken therefrom without impairing the force of the latter provisions. In other words, the prohibitory provisions of the ordinance are not dependent for their validity on section 3, and that section may, therefore, be eliminated from the measure entirely and wholly disregarded without disturbing in the remotest degree or at all the legal integrity of the provisions of the ordinance establishing residence districts and prohibiting the introduction and establishment therein of business or industrial enterprises.

▮ The settled rule as to this proposition is stated as follows in 5 California Jurisprudence, at pages 645 and 646, and as so stated is supported by the cases named in the footnotes of the text:

''The question as to whether portions of a statute which are constitutional may be upheld while other separable portions are eliminated as unconstitutional, is primarily one of intention, as shown by the general scope and purposes of the law. If the general scope of an act is within the power of the legislature, the act is not to be declared void by reason of a subsidiary provision which is beyond its power. If the different parts of the statute are severable and independent of each other, and if the manifest purpose of the legislature can be carried into effect by upholding and enforcing those provisions within its constitutional power, that purpose will not be defeated by the inclusion of an unconstitutional provision subsidiary in its nature.

It is likewise settled that if a provision which is not obnoxious to the constitution is found even in the same section with another which is repugnant thereto, the one in itself valid and complete must be sustained, unless the two are so united as that it must be presumed that the legislature would not have adopted the one without the other.''

It is plainly manifest that the provisions of section 3 were not the dominating considerations influencing the adoption and passage of the ordinance. The prime and the important purpose of the ordinance was and is to exclude from residence districts business and industrial enterprises and their offensiveness to home life.

Thus viewing section 3, the situation would be, if said section were void as counsel for the defendants contend, that under no circumstances could a business of any kind or character be maintained in residence districts, and hence, borrowing a word or two from Hamlet, the defendants find themselves ''hoisted by their own petard.''

The objection that the ordinance in question does not conform to the terms or provisions of the statute of 1917, page 1419, authorizing the legislative body of any city or town in the state to create or divide such city or town into districts for the purpose of regulating the uses of real property therein, is devoid of merit. Said statute authorizes the city council or town trustees to create such districts by ordinance, and we perceive nothing in the ordinance here which varies from the requirements of the statute. It is true, as one of the grounds of the demurrer asserts, that it is not made affirmatively to appear by the complaint that either the city planning commission, if there be such a body in the City of Stockton, or, if there be no such commission, the city council, took the steps prescribed and required by section 4 of the act of 1917, *supra,* as jurisdictional prerequisites to the exercise by said council of the authority to adopt and pass ordinances creating districts in cities or towns as the bases or for the purpose of regulating the use of the real property situated therein. The prerequisites referred to are not prescribed by the charter of the City of Stockton. It was not, however, necessary in any event to plead those matters specially. (Code Civ. Proc., sec. 459.) That section provides that in pleading ''an ordinance of a city or municipal corporation, or a *right* derived therefrom,

it is sufficient to refer to such . . . ordinance by its title and the day of its passage.'' The complaint, in general terms, states the substance of the vital provisions of the ordinance, which sufficiently indicates the title, states the time of its passage, and further alleges that the measure was duly passed by the city council. Furthermore, the full text of the ordinance is annexed to the complaint and, as before stated, by it expressly made a part thereof. Any irregularities in the passage of the measure sufficient to invalidate it constitute matters of defense.

▪ The objection that the effect of the enforcement of the prohibitory provisions of the ordinance would be to deprive the owners of real property in the residence districts of their property without due process of law has already virtually been disposed of in contravention of such objection. There is, therefore, no necessity for any further consideration herein of that point.

As will be seen, we have not attempted to review herein many of the cases cited on both sides of the controversy. We have, however, examined all the cases cited by respective counsel. None has led us to the conclusion that any substantial objection to the validity of the ordinance exists.

The judgment is reversed.

Jamison, J., *pro tem.*, and Plummer, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 24, 1928.

All the Justices present concurred.